Freiría & Co., Plaintiffs and Appellants, v. Cortés Brothers & Co., Defendants and Appellees.

Appeal from the First District Court of San Juan in an Action of Debt.

No. 2839.—Decided June 25, 1923.

Pleading—Burden of Proof.—When material allegations of the complaint are denied by the answer, the burden will not be shifted unless subsequent affirmative allegations are pleaded in the answer so inconsistent with its denials as to amount to an admission of all the material allegations of the complaint.

Evidence—Self-serving Evidence.—A party can not make evidence for himself by his written communications addressed to the other party, as to the character of dealings between them, or the liability of the party to whom they are addressed, in the absence of any reply assenting to the same. A self-serving declaration is no more admissible when reduced to writing than when uttered orally.

Id.—Proof—Written Contract.—Article 51 of the Code of Commerce not only was not repealed by the Law of Evidence of 1905, but is consistent with the latter's provision that no oral extrinsic evidence shall be admitted to add to, alter or modify a written contract except when fraud or surprise is alleged.

The facts are stated in the opinion.

*Mr. H. F. Besosa* for the appellants.

*Messrs. Texidor & De la Haba* for the appellees.

Mr. Justice Franco Soto delivered the opinion of the court.

This is a personal action of debt.

The plaintiffs sold and delivered to the defendants a lot of 100 bags of rice and now bring action for its price amounting to $1,154. This contract was made by correspondence between the plaintiffs and the defendants, but although these facts were not controverted, the defendants alleged as special defense that when the rice came into their possession it was found to be not of the same quality as that ordered and for that reason the plaintiffs and the defendants made a subsequent oral agreement authorizing the defendants to sell the said rice for the account of the plaintiffs, who would suffer the loss or receive the profit,

if any; that the defendants confirmed this agreement in writing and under it they sold 40 bags of rice for a net total of $468.75, which was remitted to the plaintiffs who refused to receive it, and that as they could not sell the rest of the lot of rice, the defendants demanded that the plaintiffs take charge of it.

The issue being thus joined and the case having been duly tried, the court below dismissed the complaint and in its findings in support of the judgment said: "The court finds that through their partner Arturo Cortés the defendants agreed with the plaintiffs that the former should sell the lot of 100 bags of rice for the account of the plaintiffs, who would sustain any loss or receive any profit. It is evident that this agreement absolutely destroyed the previous contract of purchase and sale; therefore, the plaintiffs can not demand its performance."

The appellants assign two errors, either of which would imply an erroneous weighing of the evidence.

The fundamental question involved in this case is whether the subsequent agreement pleaded by the defendants really existed, and, after the manner in which it existed is determined, whether it could destroy the effects of the original contract on which the complaint is based. In this connection it is well to say that the burden of proof has shifted to the defendants because, taking the affirmative, they must establish the truth of their contention by means of the proof required by law in circumstances like those surrounding the present case.

"But when material allegations of the complaint are denied by the answer, the burden will not be shifted unless subsequent affirmative allegations are pleaded in the answer so inconsistent with its denials as to amount to an admission of all the material allegations of the complaint." 10 R. C. L. 900.

This being the situation of the case, we find from the

evidence that the special defense of the defendants is made to depend upon the testimony of Arturo Cortés, a member of the firm of Cortés Brothers & Co., and upon the correspondence exchanged between the parties, through which we shall readily discover what actually occurred between them.

The material part of the testimony of Cortés is reduced to the statement that the lot of 100 bags of rice was not of the quality ordered; that he wrote to the plaintiffs refusing to accept the rice and afterwards took up the matter personally with Evaristo Freiría, a member of the plaintiff firm, and that after discussing it the witness said to him: " 'Let us settle this matter, if you will, in the following manner: I will try to sell this rice, I do not want to gain a cent, but do not want to bring you a loss. If I can sell this rice at the invoice price I will sell it for your account.' And he agreed. So much so that on the next day I was so sure that he had agreed that upon arriving at the office I immediately wrote a letter to Freiría & Co. confirming the agreement * * *." The letter referred to by the witness reads as follows:

"Manatí, P. R., July 22, 1920.—Messrs. Freiría & Co., San Juan.—Dear Sirs: We confirm the conversation yesterday between your Mr. Evaristo Freiría and our Mr. Arturo Cortés wherein it was agreed that we should do everything possible to realize without loss on the 100 bags of rice recently received from you, but that in case of any loss it shall be for your account. We would be pleased to be able to notify you of a total sale without any loss. Yours very truly, Cortés Brothers & Co."

Further along in his testimony, in referring to the effect of his letter upon the plaintiffs, Cortés said: "They did not answer that letter for a few days, and five or six days thereafter I wrote another letter to them enclosing a remittance and saying also that they had not replied to my previous letter. Thereupon they answered without denying

what I had said and agreed to, but in an ambiguous manner they rejected the agreement.''

The reply to which the witness referred, written by the plaintiffs, is as follows:

''San Juan, P. R., July 28, 1920.—Messrs. Cortés Brothers & Co., Manatí.—Dear Sirs: Received your favor of yesterday enclosing your check for $169.50 which we have credited to your esteemed account.

''With regard to your favor of the 22nd instant, we had not replied because we are sure that far from having a loss in the sale of rice No. 40, you will obtain a good profit.

''To convince ourselves still further of what we said to you about this rice, on Sunday we changed it from one place to another, sampling each separate bag, and we found that it is all equal to that which your Mr. Arturo Cortés saw here. To our admiration, this rice, which has been for the longest time in stock, is the best preserved and the brightest.

''Yours very truly, Freiría & Co.''

It also appears that the plaintiffs wrote to the defendants on August 18, 1920, as follows:

''San Juan, P. R., August 18, 1920.—Messers. Cortés Brothers & Co., Manatí.—Dear Sirs: We acknowledge receipt of your favors of the 16th and 17th instants. With the former we have received your check for $207 which we have credited to your esteemed account.

''With regard to the 100 bags of No. 40 rice that you say you are keeping for our account, we think there must have been a misunderstanding on your part, for we do not recollect having authorized you to sell it for our account, but on the contrary it was bought by you outright.

''We have already had the pleasure of showing to your Mr. Arturo Cortés personally, after sampling in his presence a large number of bags of the same number and of the same stack, that all of the rice was equal to that previously bought by you, and he concluded, with which we agreed, that if any bag was slightly different from the others, it must have been one that was in contact with the wall or the floor, for which reason we changed the stack on the following Sunday, as we have had the pleasure to inform

you, and in the change we found not a single bag different from the others.

"It is natural that you have not been able to sell these 100 bags as easily as you sold the others because the market has gone down noticeably and your customers undoubtedly will not be disposed to pay the same price as before; but if you will come down to the market price you will find that you can sell it as easily as before, for the stationary condition of sales is not due to the quality, which is of the best rice available today, but the price is too high and we regret it not only on your account but also because this means a considerable loss to us.

"Yours very truly, Freiría & Co."

This letter is a reply of those of the 16th and 17th of August, 1920, the latter of which we consider of exceptional importance and which reads as follows:

"Manatí, P. R., August 17, 1920.—Messrs. Feiría & Co., San Juan.—Dear Sirs: Inasmuch as notwithstanding our best efforts we have been able to sell only about 40 of the 100 bags of rice No. 40 that we held for your account, because the quality was greatly inferior to that of the same number previously received, we are asking you for instructions, as we think it would be well to reduce the price. There is no question that we could have sold it rapidly if it had been of superior quality like the other, for there was a great demand for that.

"Awaiting your orders, we are, yours very truly, Cortés Brothers & Co."

The letters transcribed explain the situation of this case. The alleged existence of a subsequent agreement or novation of the contract of purchase and sale appears from the letters of the defendants, but not from those of the plaintiffs. On the contrary, in their reply of August 18, 1920, the plaintiffs said in unequivocal language that the sale was outright and not conditional or subject to any eventuality, thus dispelling the doubts that the defendants sought to imply from the first reply of the plaintiffs of July 28, 1920, by interpreting it as an evasive answer and a tacit admission of the modification of the original con-

tract. Yet a casual examination of the said reply of the plaintiffs' shows that it was an express denial of the oral agreement that tended to destroy the effectiveness of the original contract, the plaintiffs saying, 1st, that instead of sustaining a loss, the defendants would obtain a good profit; 2nd, that the rice corresponded to the quality or sample by which it was sold. This last was the principal cause of the complaint of the defendants for invoking the modification of the contract, and, such being the case, how was it possible to find an implied admission in the terms of that answer when the plaintiffs insist and ratify therein the assertion "that the rice corresponds to the quality or sample by which it was sold?" This is very explicit language and much less could its spirit be interpreted as an assent to the new agreement by inferences that can not be drawn. Therefore, it appearing clearly that there was a complete absence of assent on the part of the plaintiffs to a second agreement, the rule applicable to this class of cases is "that a party cannot make evidence for himself by his written communications addressed to the other party as to the character of dealings between them, or the liability of the party to whom they are addressed, in the absence of any reply assenting to the same." 10 R. C. L. 1150.

"A distinction exists between the effect to be given to oral declarations made by one party to another, which are in answer to or contradictory of some statement made by the other party, and a written statement in a letter written by such party to another. It may well be that under most circumstances what is said to a man to his face, which conveys the idea of an obligation upon his part to the person addressing him, or on whose behalf the statement is made, he is at least in some measure called upon to contradict or explain; but a failure to answer a letter is entirely different, and there is no rule of law which requires a person to enter into a correspondence with another in reference to a matter in dispute between them, or which holds that silence should be regarded as an admission against the party to whom the letter is addressed.

Such a rule would enable one party to obtain an advantage over another and has no sanction in the law." 10 R. C. L. 1150.

It might be admitted that the testimony of Arturo Cortés, a member of the defendant firm, tends to support the special defense by explaining the circumstances that surrounded and brought about the alleged agreement to cancel the original contract, but aside from the fact that "a self-serving declaration is no more admissible when reduced to writing than when uttered orally" (10 R. C. L. 1150), the position assumed by the defendants in their letters to the plaintiffs is inconsistent with the testimony given by Cortés. This witness in substance said that he came to San Juan, discussed the matter with one of the members of the plaintiff firm and that they agreed that the rice in question should remain in the possession of the defendants to be sold for the account and at the risk of the plaintiffs. Nothwithstanding this agreement and without saying that it was subject to any restriction, but alleging afterwards that it was confirmed by the letter of July 22, 1920, and that they proceeded to carry it into effect by selling a part of the lot (40 bags of rice), yet the defendants asked for instructions as to how to dispose of the rest of the merchandise. See the letter of August 17, 1920. If the subsequent agreement was perfected, the plaintiffs accepting any loss or profit as the case might be, why should the defendants ask for instructions for the sale of a part of the rice if they had instructions to sell all of it? Perhaps this incompatible attitude might be explained by the fact that the market price was falling, but this same circumstance could bring suspicion into the situation taken by the defendants in attempting to rescind in some manner their original agreement to shelter themselves from the fall of the market at that very time when it continued to decline, as shown by the evidence.

On the other hand, there being no written evidence of the subsequent agreement, could the court below take into account separately the testimony of Arturo Cortés who asserted the existence of such an agreement? This is a case of a mercantile contract and article 51 of the Code of Commerce prescribes that:

"Art. 51.—Commercial contracts shall be valid and serve as the basis of an obligation and cause of action in suits, whatever may be the form or in whatever foreign language they may be executed, the class to which they correspond, and the amount involved, provided their existence is proven by some of the means established by the civil law. However, the testimony of witnesses shall not in itself be sufficient to prove the existence of a contract wherein the amount involved exceeds 1,500 *pesetas* if no other evidence is adduced in support thereof.  *  *  *  "

The amount of the transaction in this case exceeds that fixed in the said statute and its construction is so clear and simple that the only question for decision is whether this statute remained in force after the enactment of the Law of Evidence on March 9, 1905.

In the recent case of *José J. Benítez Díaz et al.* v. *Carlota and Clementina González y Lugo,* No. 263, October term, 1922, decided by the Supreme Court of the United States, mention is made of the legal standard to be followed in cases of conflict between a special law and a contrary general law. To quote the language of the court:

"The most forcible objection is that which we have stated; that a special law definitely applicable limits general expressions in other laws that otherwise might be sufficient."

We have no doubt that a rule so announced supports the conclusion that article 51 of the Code of Commerce is in force as a special statute in opposition to the Law of Evidence of 1905, but we think it well to call attention to the fact that the provision of article 51 can not be considered as something strange, or *sui generis,* as characteristic of a

particular statute. The law is generally based on principles that are not the patrimony of any nation, and in this particular case we think that article 51 of the Spanish Code of Commerce is based on the same principle of our Law of Evidence that forbids extrinsic oral evidence for the purpose of adding to, altering or modifying a previous written contract, unless its object is to show fraud or surprise, and in that sense our Law of Evidence, a general law of American origin, upholds and is in harmony with the provision of article 51 of the Code of Commerce. Conceding therefore, that the said article is in force, and there being no other means of evidence for the defendants to establish their allegations of defense than the testimony of one of the partners, it is obvious that such testimony is not sufficient to render null and without force the original contract of purchase and sale; therefore, the court below not only committed manifest error in weighing the evidence, but also failed to apply properly the rule of evidence established most strictly in the Code of Commerce for such mercantile transactions, for which the said rule fixes a pecuniary limit in order that it may be applicable.

In this same connection the Supreme Court upheld in *Loíza Sugar Co. v. Baquero & Co.,* 29 P. R. R. 803, the applicability of article 51 of the Code of Commerce and in its opinion said:

"The appellees say that these sacks of sugar were sold for speculation and that such a sale is an exception to the latter cited section of the Code of Commerce. The character of the contract must be determined, not by the purposes for which the purchasers intended to use the sugar but on the origin of the sugar. If the complainant produced the sugar, under section 326 of the Code of Commerce, a sale made by it was clearly not commercial and did not fall under section 51 of the said code. However this may be, the origin of this sugar was not shown. In other words, it was not shown that the Loíza Sugar Company was clearly within the exceptions enumerated in section 326, *supra,* and hence we are

inclined to the view that section 51 of the Code of Commerce was clearly applicable and any doubts that we have we feel bound to resolve in favor of the spirit of the Code of Commerce that contracts of this magnitude should generally be evidenced by writing unless clearly within the exceptions indicated by section 326 of such code.''

We do not think it superfluous to say that although the subsequent agreement was based, as the defendants allege, on the difference in quality or class of the rice, the evidence does not show that the defendants intended to comply strictly with the provisions of the Code of Commerce for the solution of this class of cases, for if so they would have obtained the security and protection of their rights.

For all of the foregoing reasons the judgment must be reversed and substituted by another sustaining the complaint, the parties to pay their own costs.

*Reversed.*

Chief Justice Del Toro and Justices Aldrey and Hutchison concurred.

Mr. Justice Wolf took no part in the decision of this case.