UNIÓN ASOCIACIÓN DE EMPLEADOS PROFESIONALES Y CLERICALES DE LA AUTORIDAD DE CARRETERAS, recurrente, *v.* JUNTA DE RELACIONES DEL TRABAJO DE P.R., demandada y recurrida.

*Número:* O-81-458      *Resuelto:* 23 de junio de 1987

*Nicolás Delgado Figueroa,* abogado de la recurrente; *Luis P. Nevárez Zavala,* abogado de la recurrida.

### SENTENCIA

Vistos los autos, los escritos presentados por las partes y examinados los criterios de *A.A.A.* v. *Unión Empleados A.A.A.,* 105 D.P.R. 437 (1976), se revoca la decisión de la Junta de Relaciones del Trabajo y se devuelve el caso para que ésta asuma jurisdicción y resuelva la petición presentada por la recurrente.

Así lo pronunció y manda el Tribunal y certifica el Secretario General. La Juez Asociada Señora Naveira de Rodón emitió opinión concurrente a la cual se unen los Jueces Asociados Señores Negrón García y Alonso Alonso.

El Juez Asociado Señor Ortiz concurre sin opinión escrita. El Juez Presidente Señor Pons Núñez y el Juez Asociado Señor Rebollo López disienten sin opinión escrita. El Juez Asociado Señor Hernández Denton no intervino.

(*Fdo.*) Bruno Cortés Trigo
*Secretario General*

—O—

Opinión concurrente emitida por la Juez Asociada Señora Naveira de Rodón a la cual se unen los Jueces Asociados Señores Negrón García y Alonso Alonso.

La Unión Asociación de Empleados Profesionales y Clericales de la Autoridad de Carreteras (en adelante la Unión), presentó ante la Junta de Relaciones del Trabajo (en adelante la Junta), una petición para investigación y certificación según lo dispone el Art. 5 de la Ley de Relaciones del Trabajo, Ley Núm. 130 de 8 de mayo de 1945 (29 L.P.R.A. sec. 66(3)). El propósito de la petición era que se certificara a la Unión como representante de los técnicos de fotogrametría que trabajan en la Autoridad de Carreteras (en adelante la Autoridad).

La Junta desestimó la petición al resolver que no tenía jurisdicción para entender en la controversia, porque la Autoridad no era patrono según el término se define en el Art. 2 de la Ley de Relaciones del Trabajo, *supra*, 29 L.P.R.A. secs. 63(2) y 63(11).[1] La Unión solicitó la

---

[1] La ley define patrono de la siguiente manera:

"El término 'patrono' incluirá ejecutivos, supervisores y a cualquier persona que realizare gestiones de carácter ejecutivo en interés de un patrono directa o indirectamente, pero no incluirá excepto en el caso de las instrumentalidades corporativas del Gobierno de Puerto Rico como más adelante se definen, al Gobierno ni a ninguna subdivisión política del mismo; Disponiéndose, que incluirá, además, a todo individuo, sociedad u organización que intervenga a favor de la parte patronal en cualquier disputa obrera o negociación colectiva." 29 L.P.R.A. sec. 63(2).

reconsideración y la Junta se reafirmó en su decisión. En su recurso de revisión ante nos la Unión alegó que la Junta erró al determinar que la Autoridad no es un patrono de acuerdo a la Ley de Relaciones del Trabajo de Puerto Rico, *supra*. Mediante sentencia de 10 de diciembre de 1981 devolvimos el caso a la Junta para que, a la luz de los criterios señalados en *A.A.A.* v. *Unión Empleados A.A.A.*, 105 D.P.R. 437 (1976), para determinar cuándo una agencia de gobierno funciona como una empresa privada, hiciera determinaciones de hechos sobre el funcionamiento de la Autoridad.

La Junta presentó escrito en cumplimiento de la sentencia, la Unión presentó sus objeciones y el caso quedó sometido.

En esta ocasión debemos resolver si la Autoridad es una agencia o instrumentalidad del gobierno que funciona como empresa o negocio privado para fines del derecho a la negociación colectiva y derechos laborales consagrados en las Secs. 17 y 18 de nuestra Carta de Derechos,(2) y si, por

---

(2) Las Secs. 17 y 18 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico disponen:

"*Sec. 17. [Derecho a organizarse y negociar colectivamente]*

"Los trabajadores de empresas, negocios y patronos privados y de agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados tendrán el derecho a organizarse y a negociar colectivamente con sus patronos por mediación de representantes de su propia y libre selección para promover su bienestar.

"*Sec. 18. [Derecho a la huelga, a establecer piquetes, etc.]*

"A fin de asegurar el derecho a organizarse y a negociar colectivamente, los trabajadores de empresas, negocios y patronos privados y de agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados tendrán, en sus relaciones directas con sus propios patronos, el derecho a la huelga, a establecer piquetes y a llevar a cabo otras actividades concertadas legales.

"Nada de lo contenido en esta sección menoscabará la facultad de la Asamblea Legislativa de aprobar leyes para casos de grave emergencia cuando estén claramente en peligro la salud o la seguridad públicas, o los servicios públicos esenciales." Art. II, Secs. 17 y 18, Const. E.L.A., L.P.R.A., Tomo 1, págs. 329–330.

lo tanto, es un patrono para propósitos del Art. 2 de la Ley de Relaciones del Trabajo, *supra*.

## I

Antes de comenzar a resolver la controversia planteada debemos analizar la enmienda hecha a la Ley Orgánica de la Autoridad de Carreteras, Ley Núm. 74 de 23 de junio de 1965 (9 L.P.R.A. sec. 2001 *et seq.*) por la Ley Núm. 112 de 21 de junio de 1968. La referida enmienda añadió al final del Art. 2 de la Ley Orgánica de la Autoridad de Carreteras, *supra*, 9 L.P.R.A. sec. 2002, la siguiente oración: "La ejecución por la Autoridad de los poderes y facultades que le confiere este Capítulo en ningún momento tendrán el efecto de investir a la Autoridad con el carácter de empresa privada." Del informe de la Comisión de Gobierno de la Cámara de Representantes, se desprende que el propósito de la enmienda fue aclarar cuáles fueron los poderes concedidos a la Autoridad en su Ley Orgánica e impedir que se interpretase que mediante la concesión de estos poderes se asemejó la Autoridad a una empresa privada.[3] Hemos reiterado en varias ocasiones el principio de derecho constitucional que dispone que le corresponde a los tribunales ser los últimos intérpretes de la Constitución. *Silva* v. *Hernández Agosto*, 118 D.P.R. 45 (1986); *Vélez Ramírez* v. *Romero Barceló*, 112 D.P.R. 716 (1982); *P.S.P.* v. *E.L.A.*, 107 D.P.R. 590 (1978); *Figueroa Ferrer* v. *E.L.A.*, 107 D.P.R. 250 (1978); *Santa Aponte* v. *Srio. del Senado*, 105 D.P.R. 750 (1977). Le corresponde al poder judicial determinar, a base de un análisis de los poderes y facultades otorgados por ley a una agencia o instrumentalidad del gobierno, si para propósitos de hacer valer los derechos

---

[3] 22 Diario de Sesiones de la Asamblea Legislativa, Sesión Ordinaria, T. 2, pág. 541 (1968).

consagrados en las Secs. 17 y 18 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, ésta funciona o no como empresa o negocio privado.

## II

En *A.A.A.* v. *Unión Empleados A.A.A.*, supra, págs. 455–456, esbozamos los criterios para determinar cuándo es que una instrumentalidad del gobierno funciona como empresa o negocio privado:

> Los debates, en resumen, aportan dos criterios que pueden considerarse, junto a muchos otros, para resolver cuándo es que una agencia del gobierno funciona como una empresa privada y eliminan uno. Del lenguaje en sí de la Sec. 18, de las circunstancias de su formulación, de su propósito, de su glosa, de las realidades a que sirve y en que opera, pueden derivarse otros criterios. El Informe Helfeld (vol. 1, pág. 21) sugiere acertadamente varios factores que deben tomarse en consideración, entre ellos: si los empleados de la agencia concernida están cubiertos por la Ley de Personal del Estado Libre Asociado; si los servicios prestados por la agencia, por su naturaleza intrínseca, nunca han sido prestados por la empresa privada; si la agencia está capacitada para funcionar como una empresa o negocio privado; si la agencia de hecho funciona como una empresa o negocio privado; el grado de autonomía fiscal de que disfrute la agencia; el grado de autonomía administrativa de que goce; si se cobra o no un precio o tarifas por el servicio rendido (precio que debe ser básicamente equivalente al valor del servicio); si los poderes y facultades concedidos en la ley orgánica de la agencia la asemejan fundamentalmente a una empresa privada; y si la agencia tiene o no la capacidad para dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario. A estos criterios pueden añadirse otros, sin pretender agotar la lista: la estructura en sí de la entidad; la facultad de la agencia para demandar y ser demandada ilimitadamente; el poder de obtener fondos propios en el mercado general de valores a base de su récord económico y sin empeñar el crédito del Estado Libre

Asociado; la facultad de adquirir y administrar propiedades sin la intervención del Estado; el punto hasta donde el reconocimiento a los trabajadores de la agencia de los derechos a que se refiere el primer párrafo de la Sec. 18 concuerda o no con el esquema constitucional.

Ningún criterio es determinante por sí solo del problema que nos ocupa. Debemos examinar en cada caso la conjunción de factores existentes para a su luz resolver si la agencia concernida funciona o no como un negocio privado en el sentido constitucional.

De acuerdo con estos criterios debemos determinar si la Autoridad es una instrumentalidad gubernamental que funciona como un negocio o empresa privada. La Autoridad fue creada como corporación pública mediante la Ley Núm. 74, *supra,* con el propósito de "continuar la obra de gobierno de dar al pueblo las mejores carreteras, facilitar el movimiento de vehículos, aliviar en todo lo posible los peligros e inconvenientes que trae la congestión en las carreteras del Estado Libre Asociado y para afrontar la creciente demanda de mayores y mejores facilidades de tránsito que el crecimiento de la economía de Puerto Rico conlleva". 9 L.P.R.A. sec. 2002.[4]

Uno de los factores que debemos tomar en consideración es si los empleados de la Autoridad están cubiertos por la Ley de Personal del Estado Libre Asociado. La Junta determinó que la Autoridad, "por haber estado en el Servicio Exento o sin oposición", pasó a ser un Administrador Individual según la Sec. 5.3 de la Ley de Personal, Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1343).[5] Erró al así hacerlo.

---

[4] Art. 2 de la ley, 9 L.P.R.A. sec. 2002

Sobre la organización interna y funcionamiento de la Autoridad de Carreteras, véase *Presupuesto para el Año Fiscal 1988,* Estado Libre Asociado de Puerto Rico, Tomo II, Sec. 104, pág. 2 y ss.

[5] La Sec. 5.3 de la Ley de Personal, 3 L.P.R.A. sec. 1343, establece en sus partes pertinentes:

La Sec. 5.3 de la Ley de Personal, *supra*, señala que pasarán a ser Administradores Individuales aquellas agencias que al presente se encuentren en los Servicios Exentos o Sin Oposición. Al examinar la Sec. 8 de la Ley de Personal de 1947, según enmendada, Ley Núm. 345 de 12 de mayo de 1947 (3 L.P.R.A. sec. 648), encontramos que ésta no incluía a la Autoridad ni en los cuarenta (40) apartados del Servicio Exento ni en los doce (12) del Servicio sin Oposición. En *Pastor Lozada* v. *Director Ejecutivo*, 101 D.P.R. 923, 929 (1974), resolvimos que la Sec. 648(a) disponía "taxativamente los cargos que están comprendidos en el Servicio Exento". Al no estar la Autoridad comprendida dentro de la Sec. 648, ésta no puede considerarse como un Administrador Individual al amparo del primer párrafo de la Sec. 5.3 de la nueva Ley de Personal, *supra*.

Debemos ahora examinar si la Autoridad es un Administrador Individual bajo el inciso (3) de la Sec. 5.3 de la Ley de Personal, *supra*. El Art. 7(a) de la Ley Orgánica de la Autoridad de Carreteras, *supra*, 9 L.P.R.A. sec. 2007(a), establece que:

"Las siguientes agencias serán Administradores Individuales:

"Todas aquellas agencias que al presente estén en los Servicios Exentos o Sin Oposición. Asimismo, serán Administradores Individuales los siguientes:

. . . . . .

"(3) Toda agencia que por ley especial haya sido incluida en el Servicio Exento, o en el Servicio sin Oposición conforme a las disposiciones de la Ley núm. 345 de 12 de mayo de 1947, según enmendada, conocida como Ley de Personal, o de leyes especiales.

. . . . . .

"Toda subdivisión o programa de cualquier agencia, no incluido en la enumeración que antecede, que por ley especial haya sido incluido en el Servicio Exento o en el Servicio sin Oposición conforme a las disposiciones de la Ley núm. 345 de 12 de mayo de 1947, según enmendada, conocida como Ley de Personal, o de leyes especiales se considerará parte de la agencia a los efectos de constituir un solo Administrador Individual, o pertenecer como un todo a la Administración Central, según sea el caso."

(a) Los nombramientos, separaciones, ascensos, traslados, ceses, reposiciones, suspensiones, licencias y cambios de categoría, remuneración o título de los funcionarios y empleados de la Autoridad se harán o permitirán de acuerdo con normas y reglamentos aprobados por la Autoridad en consulta con el Director de la Oficina de Personal conducente al establecimiento de un plan general análogo, *en tanto en cuanto la Autoridad lo estime compatible con los mejores intereses de la Autoridad, de sus empleados y de sus servicios al público,* —al que pueda estar en vigor para los empleados del Estado Libre Asociado. (Énfasis suplido.)

De una lectura del anterior artículo se desprende que el mismo autoriza la adopción, por parte de la Autoridad, de reglamentos análogos a la Ley de Personal de los Empleados del Estado Libre Asociado de Puerto Rico. Sin embargo, la adopción de dichos reglamentos queda sujeta a la discreción de la propia Autoridad, no a las determinaciones de la Oficina Central de Administración de Personal. Esto hace que, con excepción del principio de mérito, la Ley de Personal, *supra*, no sea de aplicación mandatoria a la Autoridad. *Torres Ponce* v. *Jiménez*, 113 D.P.R. 58 (1982); *Reyes Coreano* v. *Director Ejecutivo*, 110 D.P.R. 40 (1980).

Pasemos ahora a analizar la aplicación de los otros criterios mencionados en *A.A.A.* v. *Unión Empleados A.A.A.*, supra. La estructura de la Autoridad, así como sus poderes y facultades, la asemejan a una empresa privada y la capacitan para funcionar como tal. El Art. 4 de la Ley Orgánica de la Autoridad de Carreteras, *supra*, 9 L.P.R.A. sec. 2004, la faculta para establecer normas para mejorar sus negocios; tener *completo* control sobre cualesquiera facilidades de tránsito poseídas, que incluya, pero que no se limite a, la preparación de planos, diseños, costos de construcción, mejoras de estas facilidades de tránsito; hacer contratos y ejecutar los instrumentos necesarios o incidentales a sus poderes; adquirir propiedad mediante

compra, donación, permuta, y cobrar por el uso de sus facilidades o servicios. Ley Orgánica de la Autoridad de Carreteras, *supra*, 9 L.P.R.A. sec. 2004, incisos (c), (d), (e), (h), (i) y (j).

La Autoridad tiene completa autonomía administrativa; tiene sucesión perpetua, puede adoptar estatutos para reglamentar sus asuntos, puede demandar y ser demandada. También puede realizar todos los actos necesarios o convenientes para llevar a cabo los poderes conferidos tales como comprar, arrendar, vender, hacer préstamos, contratar servicios profesionales, entre otros. Ley Orgánica de la Autoridad de Carreteras, *supra*, 9 L.P.R.A. sec. 2004, incisos (a), (c), (g) y (h).

En el ámbito fiscal, funciona con independencia del Gobierno del Estado Libre Asociado de Puerto Rico. Tiene completo control y supervisión sobre la naturaleza y necesidad de todos sus gastos y la forma en que han de incurrirse, autorizarse y pagarse, sin sujeción a ninguna disposición de ley que regule los gastos de fondos públicos. Puede tomar dinero a préstamo para cualquiera de sus fines corporativos y puede emitir bonos. Ley Orgánica de la Autoridad de Carreteras, *supra*, 9 L.P.R.A. sec. 2004, incisos (f), (*l*) y (m).

La Junta le concede mucho peso, como factor en contra de la autonomía fiscal, al hecho de que el 57% de los ingresos de la Autoridad provienen de los arbitrios sobre la gasolina y el diesel. Sin embargo, tal hecho por sí solo no es determinante. Además, la Autoridad tiene poderes para aumentar sus ingresos bajo otros renglones.[6]

La Autoridad funciona como una empresa privada. Tiene un presupuesto y cuentas separadas de las del

---

[6] Por ejemplo, podría aumentar el peaje en las autopistas, cobrar con ganancias las carreteras que construye para los municipios, construir estacionamientos con fines de lucro, ofrecer concesiones para operar locales aledaños a las carreteras que construye donde se ofrezcan servicios de comida, combustible y venta de artículos de primera necesidad y regalos.

Gobierno Central.[7] Contrata servicios profesionales directamente con la persona o empresa en cuestión y los servicios de construcción a través de subastas públicas.[8] Diseña y construye proyectos para sí, los municipios y otras agencias locales, cobrando a su vez por lo invertido.[9] Ha realizado préstamos con el Banco de Fomento y con otras entidades a través de éste. Ha efectuado préstamos directos con la *Farmers Home Administration* y emite bonos garantizados por la Autoridad, bonos que no empeñan el crédito del Estado Libre Asociado de Puerto Rico.[10] 9 L.P.R.A. secs. 2015 y 2004(*l*). En la actualidad, opera dos autopistas financiadas por la Autoridad mediante emisiones de bonos que son responsabilidad de la Oficina de Administración de Autopistas y por las cuales ésta cobra una tarifa que se fija para ayudar a pagar los costos de construcción (que incluye el financiamiento), operación y mantenimiento. Lo que se intenta mediante el cobro de peaje es que la autopista sea autoliquidable.[11]

La Autoridad recibe los beneficios por la operación de un estacionamiento en Santurce, y en ocasiones ha anunciado los servicios que presta.[12]

Por último, la Autoridad planifica su presupuesto de acuerdo a la cantidad de dinero que espera recibir de los arbitrios de gasolina, peaje y otras fuentes secundarias.[13] Todo lo anteriormente señalado es indicativo de que la Autoridad, de hecho, funciona como un negocio privado, en forma de corporación, que se dedica principalmente a la

---

[7] Determinaciones de Hecho de la Junta, pág. 5; Testimonio oral, pág. 71.

[8] Testimonio oral, pág. 72.

[9] Testimonio oral, págs. 54, 64.

[10] Testimonio oral, págs. 193–194, 316–317.

[11] Testimonio oral, págs. 74–75, 92–93, 217–219, 227.

[12] Testimonio oral, págs. 198–199, 358, 387.

[13] Testimonio oral, págs. 58, 259.

construcción de carreteras y otras facilidades que mejoren el tránsito terrestre en Puerto Rico. La mayoría de las facilidades que construye las traspasa luego al Estado o se las entrega al que las encargó cobrando su costo. Para la construcción de dichas facilidades subcontrata a distintas constructoras privadas las cuales se deben ceñir a los diseños y requisitos de construcción y materiales que establece la Autoridad.

La Junta no hizo determinaciones de hecho sobre el grado de reconocimiento por la agencia de los derechos a la negociación colectiva y la huelga. Sin embargo, en el récord hay prueba de que la Asociación y la Autoridad han negociado en varias ocasiones asuntos laborales. Aunque esto no significa que la Autoridad haya reconocido a la Asociación como Unión, de ello puede concluirse que ha hecho concesiones laborales para evitar el impacto negativo de una huelga, lo que constituye un reconocimiento indirecto de los derechos constitucionales de los empleados.

Con relación a los criterios o factores a tomarse en consideración para resolver la controversia ante nos y el peso que se le deba dar a cada uno, ya en *A.A.A.* v. *Unión Empleados A.A.A.*, supra, pág. 456, expusimos, que "[n]ingún criterio es determinante por sí solo del problema que nos ocupa. Debemos examinar en cada caso la conjunción de factores existentes para a su luz resolver si la agencia concernida funciona o no como un negocio privado en el sentido constitucional". Es claro que la enumeración de factores hecha en el caso no es taxativa y que ninguno de estos criterios tendrá más peso o valor que los demás.

Cabe señalar que el mero hecho que la Autoridad posea entre sus facultades el poder de expropiación forzosa, Art. 4 de la Ley Orgánica de la Autoridad de Carreteras, *supra*, 9 L.P.R.A. sec. 2004, no tiene el efecto de convertir a ésta en una corporación pública o instrumentalidad del Estado

Libre Asociado de Puerto Rico. Que la Autoridad posea este poder como parte de sus funciones públicas como corporación público-privada, no cambia la naturaleza de la Autoridad establecida a base de los demás criterios antes discutidos, los cuales, tomados en conjunto, apoyan la clasificación de la Autoridad como una instrumentalidad del gobierno que funciona como empresa o negocio privado para propósito de los derechos consagrados en las Secs. 17 y 18 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico.[14]

## II

Procede que analicemos el efecto que tuvo el Plan de Reorganización Núm. 6 de 1971 (3 L.P.R.A. Ap. III) sobre el funcionamiento y organización de la Autoridad.

En el Informe de la Comisión de Reorganización de la Rama Ejecutiva de 26 de febrero de 1971, pág. 50, se dice que el Gobierno dispone de una estructura administrativa impropia para atender las demandas del sector de la transportación como resultado de estar la responsabilidad por la transportación terrestre compartida entre el Departamento de Obras Públicas y la Autoridad. Por razón de la relación estrecha entre los distintos modos de transportación y con el propósito de tener operaciones eficientemente administradas, el Informe de la Comisión de Reorganización, *supra*, págs. 50–52, recomendó centralizar las operaciones relacionadas con la transportación. Como resultado de lo anterior, se desarrolló el Plan de Reorganización Núm. 6 de 1971, *supra*. Mediante este plan

---

[14] Existe un número de corporaciones público-privadas que, al igual que la Autoridad, tienen el poder de expropiación forzosa sin que ello tenga el efecto de cambiar su naturaleza o clasificación. Entre éstas están: la Autoridad Metropolitana de Autobuses, 23 L.P.R.A. sec. 610; la Autoridad de Energía Eléctrica, 22 L.P.R.A. sec. 196, según enmendada, y la Autoridad de Acueductos y Alcantarillados, 22 L.P.R.A. sec. 144.

se redenominó el Departamento de Obras Públicas como Departamento de Transportación y Obras Públicas, Plan de Reorganización, *supra*, Art. I; se adscribió a éste la Autoridad de Carreteras[15] y se estableció que "los poderes y deberes de la Autoridad serían ejercidos por el Secretario de Transportación y Obras Públicas. Se suprime la Junta de Gobierno de la Autoridad, *sin que por ello se entienda que sus deberes y poderes quedan en forma alguna restringidos*". (Énfasis suplido.) Plan de Reorganización, *supra*, Art. V. El propósito de este Plan de Reorganización fue lograr una mayor eficiencia mediante la planificación integrada entre los departamentos o agencias encargadas de la transportación. Informe de Reorganización, *supra*, pág. 52. Esta necesaria integración y coordinación se trató de lograr al facultar al Secretario de Transportación y Obras Públicas a ejercer los poderes y deberes de la Autoridad. Plan de Reorganización, *supra*, Art. V.

De otra parte, en el *Estudio de la Organización y Funcionamiento de la Rama Ejecutiva del Gobierno de Puerto Rico de 1985*, pág. 18, se dice que el propósito de los estudios de reorganización y las medidas adoptadas a base de éstos es hacer un esfuerzo por mejorar la función ejecutiva del Gobernador. Mediante la reorganización, las relaciones de las empresas gubernamentales con la Rama Ejecutiva y el resto del Gobierno se hacen a través del departamento al cual queden adscritas logrando así mejor comunicación y planificación integrada.

Como hemos podido observar a pesar de que, en virtud del Plan de Reorganización, *supra*, la Autoridad fue

---

[15] También se adscribieron al Departamento de Transportación y Obras Públicas la Autoridad de los Puertos y la Autoridad Metropolitana de Autobuses suprimiéndose sus respectivas juntas de directores y transfiriéndole al Secretario de Transportación y Obras Públicas los poderes y facultades de éstas. Esto no tuvo el efecto de variar el funcionamiento de estas agencias como empresa o negocio privado. En ambas autoridades se han certificado uniones obreras.

adscrita al Departamento de Transportación y Obras Públicas, la relación jurídica entre ambos no ha tenido el efecto de alterar en forma alguna la naturaleza de la Autoridad; aún tiene personalidad propia y funciona como una empresa o negocio privado. El Plan de Reorganización, *supra,* no afectó los poderes y facultades que poseía la Autoridad. Tampoco tiene el efecto de alterar el análisis de los criterios expuestos en *A.A.A.* v. *Unión Empleados A.A.A.,* supra, hecho en la segunda parte de esta Opinión.

Al aplicar los criterios establecidos en *A.A.A.* v. *Unión Empleados A.A.A.,* supra, resolvemos que la Autoridad es una corporación pública que funciona como un negocio o empresa privada para fines de las Secs. 17 y 18 del Art. II de nuestra Constitución. Esta determinación, a su vez, nos lleva a concluir que la Autoridad es un patrono, según este término se define en el Art. 2 de la Ley de Relaciones del Trabajo, *supra,* y que, por lo tanto, la Junta erró al desestimar la petición por falta de jurisdicción.