CT-97-1                          1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| ROXANA M. ZAMBRANA TORRES<br>        Demandante-Peticionaria<br><br>    .V<br><br>SERGIO L. GONZALEZ Y OTROS<br><br>        Demandado-Recurrido | Certificación<br><br>98TSPR65 |

Número del Caso: CT-97-1

Abogados Parte Peticionaria: Lcdo. Harry Anduze Montaño

Abogados Parte Recurrida: Lcdo. Luis R. Pérez Giusti

U.S. DISTRICT COURT

Fecha: 6/10/1998

Materia: CERTIFICACION

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Roxana M. Zambrana Torres

        Demandante

        v.                              CT-97-1      Certificación

Sergio L. González y
otros

        Demandados

            Opinión de Conformidad del Juez Asociado señor Negrón García

            San Juan, Puerto Rico a 10 de junio de 1998

                                    I

        Todo jurista sabe que en muchas ocasiones una disposición de ley es susceptible de varias interpretaciones. Siguiendo los canones de hermenéutica, como en el pasado, optamos por avalar aquella que propicia y más armoniza con la intención legislativa.

        Sucede que el Art. 21 del Reglamento de Personal de la Autoridad de Carreteras –salvo sustituir "las autoridades" por "el Director Ejecutivo"–, copia <u>ad</u> <u>verbatim</u> la prohibición **pre y post electoral** establecida en la Sec. 4.7 de la Ley de Personal. (3 L.P.R.A. sec. 1337). Reza:

        "<u>**PROHIBICION**</u>

            A los fines de asegurar la fiel
        aplicación del principio de mérito en el
        servicio público durante  períodos pre y

post eleccionarios, el Director Ejecutivo **se abstendrá de efectuar cualquier transacción de personal** que envuelva las áreas esenciales al principio de mérito, tales como nombramientos, ascensos, descensos, traslados, adiestramientos y cambios de categoría de empleados.

Esta prohibición comprenderá el período de dos (2) meses antes y dos (2) meses después de la celebración de las Elecciones Generales de Puerto Rico.

Esta prohibición será **absoluta a excepción** de aquellas **transacciones** de personal en que el abstenerse de efectuarlas afectaría adversamente los servicios que se prestan en programas esenciales.

**Toda excepción deberá tener la aprobación previa del Director Ejecutivo y del Secretario. En la solicitud de dicha transacción deberán indicarse los efectos adversos que se evitarán mediante la excepción."** (Énfasis nuestro).

Su texto claramente impide "cualquier **transacción**[1] de personal que envuelva las áreas esenciales al principio de mérito **tales** como **nombramientos**, descensos, traslados y cambios de categorías de empleados". (Énfasis nuestro). El carácter tajante de la prohibición se revela en el tercer párrafo que la caracteriza de **"absoluta"**. Ahora bien, para atemperar ese rigor, garantizar la continuidad gubernamental, superar situaciones anómalas –incluso las que cronológicamente puedan presentarse con empleados probatorios–, se exceptúan "aquellas **transacciones** de personal en que el abstenerse de efectuarlas afectaría[n] adversamente los servicios que se prestan en **programas esenciales."** (Énfasis nuestro). Sin embargo, se condiciona a que toda **excepción sea aprobada previamente** por el Director Ejecutivo **y** el Secretario de Transportación y Obras Públicas. Requerirá una solicitud expositiva de "los efectos adversos que se evitarán mediante la excepción."

---

[1] Sin pretender penetrar sus distintos elementos y caracteres –véase la erudita obra del Doctor Luis A. Rivera Rivera, El Contrato de Transacciones, San Juan, P.R., Ed. Jurídica, 1998-, más allá de su significado técnico-jurídico bajo el Art. 1709 de nuestro Código Civil, aquí la palabra **transacción** es un **anglicismo** de cuyo uso no están exentas otras leyes y numerosas decisiones de este Tribunal. "Se trata de una traducción literal de 'transaction'. En inglés significa una serie de ocurrencias que se extienden prolongadamente. Significa también la ejecución de actos consumados o en proceso de consumación." [casos omitidos]. Cintrón García, A., según citado por Rivera Rivera ob. cit., pág. 22.

El vocablo más preciso en el vernáculo sería **trámite**, "[d]el latín 'trames' (v.), tramitis, camino paso de una a otra parte; cambio una cosa a otra. **Administrativamente, cada uno de los estados, diligencias y resoluciones de un asunto hasta su terminación."** (Énfasis nuestro). Guillermo Cabanellas, Diccionario Enciclopédico de Derecho Usual, 20ª ed., Buenos Aires, Ed. Heliasta S.R.L., 1981, T. VIII, pág. 162; María Moliner, Diccionario de Uso del Español, Madrid, Ed. Gredos, 1977, págs. 1359, 1362, 1364; Manuel Ossorio Y Florit, Diccionario de Ciencias Jurídicas, Políticas y Sociales, 20ª ed., Buenos Aires, Ed. Heliasta S.R.L., 1992, págs. 979-980; Diccionario Salamanca de la Lengua Española, Santillana, Univ. Salamanca, pág. 1578.

Así aclarado, para evitar confusiones en nuestra exposición, usaremos en esta ponencia el referido anglicismo.

II

No albergamos duda alguna de que estamos ante una **transacción** vedada en un área esencial al sistema de mérito (nombramientos), sin que antes se solicitara, justificara y aprobara como **excepción**. Un **nombramiento** abarca **lógicamente** el reclutamiento y selección, que a su vez comprende la **aprobación del período probatorio**. Se trata de un **paso esencial** en la selección del personal; sin período probatorio, nadie puede ser **nombrado o ascendido** a un puesto regular. El propio Reglamento de Personal de la Autoridad, inequívocamente establece que "[t]oda persona nombrada o ascendida para ocupar un puesto permanente de carrera estará sujeta al **período probatorio** de dicho puesto **como parte** del **proceso de selección** en el servicio público." (Énfasis nuestro) (Art. 10, Sec. 10.8(1)). El período probatorio no será menor de tres (3) meses ni mayor de un (1) año. Aunque de ordinario "[n]o será prorrogable" (Art. 10 Sec. 10.8(2)), puede quedar interrumpido "por cualquier razón justificada". (Art. 10 Sec. 10.8(3)). ¿Qué mayor **razón justificada** que la veda electoral?

Si las evaluaciones de un período probatorio no fueran una **transacción** de personal, ¿cómo explicar que el Reglamento contenga varias disposiciones normativas al efecto? ¿Cómo ignorar la Regla 10.8(7) dispositiva de que automáticamente, "todo empleado que aprobare satisfactoriamente el período probatorio **pasará a** ocupar el puesto con carácter regular"?

III

Desde el primer día del **período probatorio** de la Sra. Roxana M. Zambrana Torres, –18 de mayo de 1992– el propio Director Ejecutivo, Jorge L. Bigas Mulero le comunicó que al terminarlo satisfactoriamente, "ocupar[í]a dicho puesto con carácter regular, **efectivo** el 18 de septiembre de 1992." (Exh. 8). Dicho funcionario sabía que el período probatorio y eventual nombramiento regular recaería durante la veda electoral. La Sra. Zambrana Torres ocupaba el cargo de Directora de Relaciones Laborales de la Autoridad, por lo cual es de suponer que también conocía (o debía

conocer) ésta prohibición reglamentaria. **Aun así, el Director Ejecutivo Bigas Mulero, ni nadie lo tramitó como excepción, justificó, ni obtuvo el consentimiento del Secretario de Transportación y Obras Públicas, Ing. Hermenegildo Ortiz González.**

La **Evaluación Final favorable** de la Sra. Zambrana Torres –al igual que las dos evaluaciones anteriores– fue solamente suscrita el 21 de septiembre por su Supervisora y Directora de Área, Sra. Carmen Vanessa Dávila. Es altamente revelador que hasta ese momento, el Director Ejecutivo, Bigas Mulero, como poder nominador, no había endosado ni firmado ninguna de esas dos. Poco después, el 8 de octubre le notificó oficialmente que había cumplido los requisitos para ocupar el "puesto con carácter permanente **efectivo** el 18 de septiembre de 1992. No obstante, el **trámite** será **efectivo el 3 de enero de 1993**, luego de concluida la moratoria pre y post eleccionaria." (Exh. 9). El 21 de octubre en plena veda electoral, **endosó con su firma la última evaluación.**

Fue durante el período de **congelación electoral** que ilegalmente, contrario al Reglamento, se realizaron los actos y llevó a cabo el proceso sustantivo que culminó en la **transacción** relativo al nombramiento de la Sra. Zambrana Torres. Evidentemente el "trámite", que quedó pendiente post veda electoral, a que se refirió el Director Ejecutivo Bigas Mulero en su comunicación, fue simbólico: **una simple formalidad.**[2]

IV

No es persuasiva la respetable tesis de que la prohibición es **sólo** al Director Ejecutivo; a nadie más. Esa visión es limitadísima e ignora que el Reglamento de Personal de la Autoridad de Carreteras y Transportación impone a dicho funcionario la responsabilidad de administrarlo y ejecutarlo conforme la política pública que encarna. Las **transacciones** de personal realizadas por sus subalternos, son a su nombre, por delegación. (Art. 6).[3]

---

[2] La certificación formulada por el foro federal, traduce "trámite" como "formalities".

[3] Dispone que la administración del Reglamento de Personal es

Reconocemos que los **nombramientos probatorios** son elementos propios que ayudan a implantar el principio de mérito y que su evaluación final valida ese principio. Ello no altera la ilegalidad del nombramiento de la Sra. Zambrana Torres. Nos explicamos.

En su sustrato, el Reglamento de la Autoridad –al igual que la Ley de Personal–, prohíbe toda **transacción** de personal contraria al principio de méritos. O sea, las determinaciones del Director Ejecutivo, como poder nominador, relativas al personal de la Autoridad, **siempre** tienen que estar fundadas en las más sanas normas de excelencia y mérito. **En ninguna época pueden autorizarse transacciones de personal contrarias al principio de mérito.** Por esta razón no cabe, como argumento, ante la prohibición eleccionaria, invocar las cualidades intrínsecas y demás buenas aptitudes de la Sra. Zambrana Torres; tampoco la buena fe del Director Ejecutivo Bigas Mulero. Al igual que lo hicimos hace veinte (20) años, presumimos la "aptitud y confiabilidad para [ella] ejercer el cargo durante el período de prueba" y, reiteramos, que "[l]a severidad de la prohibición que toma cuerpo en la diáfana redacción del estatuto, no queda enervada por los buenos propósitos de la autoridad nominadora." Ortiz v. Alcalde de Aguadilla, 107 D.P.R. 819, 823; 824-825 (1978).[4]

V

Interpretar que una Evaluación Final que genera favorablemente el tránsito automático de nombramiento probatorio a permanente, no es una **transacción** prohibida durante el período pre y post electoral, es crear una peligrosa excepción por fiat judicial. Ello desvirtúa el sistema de

---

responsabilidad de su Director Ejecutivo, quien podrá delegar funciones para ejecutar su política pública.

[4] Tampoco convence el argumento matemático basado en que de los ciento veinte (120) días prohibidos habían transcurrido ciento cinco (105), cuando entró la veda electoral. El Legislador fijó dicho término y no es incumbencia del Tribunal dictaminar arbitrariamente excepciones. El abanico de posibilidades sería demasiado amplio.

Si lo hacemos, ¿declararíamos nulo o sería válido un nombramiento sí sólo transcurrieran dos (2) o varios días más, antes de la veda? ¿Dónde

mérito y socava profundamente una de sus áreas más críticas y sensibles.

**Es permitir indirectamente lo que directamente está prohibido**. Precisamente, para evitar reclamos judiciales recíprocos de **favoritismo versus persecución política partidista –**semejante al alegado despido en autos, por ser la Sra. Zambrana Torres un reconocido miembro activo del Partido Popular Democrático (P.P.D.), frente a una nueva administración Partido Nuevo Progresista (P.N.P.)–, se estableció la veda electoral. **Vía interpretación judicial evitemos retornar a una época de oscurantismo ya superada en nuestra democracia.**

En conclusión, salvo transacciones de personal basadas en la **excepción** debidamente fundamentada, según visualizada en la propia reglamentación, no son permisibles nombramientos de personas a puestos cuyas evaluaciones y términos probatorios caigan dentro del período de veda pre y post electoral.


ANTONIO S. NEGRON GARCIA
Juez Asociado

---

trazamos la raya?

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


ROXANA M. ZAMBRANA TORRES

    Demandante

      vs.                              CT-97-1        CERTIFICACION

SERGIO L. GONZALEZ Y OTROS

    Demandados


Opinión de Conformidad emitida por el Juez Asociado SEÑOR CORRADA DEL RIO a la que se unen el Juez Asociado señor Rebollo López y el Juez Asociado señor Hernández Denton.


San Juan, Puerto Rico, a 10 de junio de 1998.

El presente recurso de certificación plantea la cuestión de si la aprobación del período probatorio de una empleada durante el período de veda electoral dispuesto por la Ley de Personal de Puerto Rico constituye una transacción de personal dentro del principio de mérito establecido por ley. Por las razones expuestas a continuación concluimos en la afirmativa.

I

La presente controversia llega ante nos en virtud del procedimiento de certificación interjurisdiccional prescrito por la Regla 53.1 (f) de Procedimiento Civil de Puerto Rico.[5] Mediante resolución de 21 de abril de 1997, el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico nos presentó una solicitud de certificación, la que acogimos el 15 de agosto de 1997. La cuestión certificada es la siguiente:

    "[W]hether plaintiff Roxana M. Zambrana Torres' approval of a probationary period during the electoral prohibition period

---

[5]32 L.P.R.A. Ap. III R. 53.1.

constitutes a personnel transaction within the merit principle of the Public Personnel Law of Puerto Rico."

El 9 de abril de 1992, un año electoral en Puerto Rico, estando pautadas las elecciones generales para el 2 de noviembre de 1992, la Autoridad de Carreteras de Puerto Rico (en adelante Autoridad) publicó una convocatoria de empleo para la posición de Director de la Oficina de Relaciones Laborales.  El 27 de abril del mismo año Roxana Zambrana Torres presentó una solicitud para ocupar dicho cargo.  El 5 de mayo de 1992 el supervisor de personal de la agencia certificó que Zambrana cumplía con todos los requisitos del cargo, por lo que posteriormente el Director Ejecutivo de la Autoridad notificó a Zambrana su nombramiento para el puesto.

El nombramiento de Zambrana estaba sujeto a un período probatorio[6] de cuatro (4) meses, el cual se extendía hasta el 18 de septiembre de 1992. Como parte del proceso de evaluación de la empleada durante el período probatorio, la Sra. Zambrana estuvo sujeta a tres (3) evaluaciones, la última de las cuales fue realizada el 18 de septiembre, día comprendido dentro de la veda electoral[7].

Siendo favorables las evaluaciones realizadas por la Jefa de la Oficina de Personal, el 8 de octubre de 1992, veinticinco (25) días antes de las elecciones generales, el Director Ejecutivo de la Autoridad le notificó a Zambrana que había aprobado satisfactoriamente el período probatorio. Le indicó en la carta, sin embargo, que "[n]o obstante, el trámite será efectuado el 3 de enero de 1993, luego de concluida la moratoria pre y post eleccionaria."  Una vez concluida la

---

[6]Definido en el Reglamento Núm. 02-005 de la Autoridad, según enmendado el 6 de agosto de 1992, como el "término de tiempo durante el cual un empleado, al ser nombrado en un puesto, está en período de adiestramiento y prueba y sujeto a evaluaciones periódicas en el desempeño de sus deberes y funciones."  Reglamento de Personal de la Autoridad de Carreteras y Transportación  Artículo 7 (33).

[7]Sección 4.7 de la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. 1337; Artículo 21 del Reglamento de Personal de la Autoridad de Carreteras. La veda electoral se extiende desde dos (2) meses antes de las elecciones generales hasta dos (2) meses después de celebradas las mismas. 3 L.P.R.A. sec. 1337.

veda electoral, Zambrana comenzó a desempeñar sus tareas con carácter permanente.

El 9 de julio de 1993 el nuevo Director Ejecutivo de la Autoridad le envió una carta a Zambrana informándole que, a raíz de una auditoría realizada a los expedientes de personal, surgía que su nombramiento fue realizado en violación al Reglamento de Personal de la Autoridad. Como consecuencia de ello, y luego de brindarle la oportunidad a Zambrana de expresarse al respecto, el Director de la Autoridad la destituyó de su cargo el 4 de marzo de 1994.

El 8 de febrero de 1995, Zambrana presentó una acción civil en el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico alegando haber sido despedida por discrimen político. Es como parte de dicho pleito que se nos solicitó la presente Certificación.

II

La Exposición de Motivos de la Ley de Personal de Servicio Público de Puerto Rico[8] (en adelante Ley de Personal) dispone, en la parte pertinente, que:

> "...El aspecto más importante del esfuerzo que representa esta nueva ley, consiste en la precisión de una política pública que reafirma el principio de mérito y extiende dicho principio a todos los sectores del empleo público a los cuales no se ha extendido en la actualidad. Esta decisión de política pública es la base firme en que se sostiene el Sistema de Personal establecido, y en la misma se destacan cuatro elementos fundamentales.
> PRIMERO, el Sistema de Personal establecido está diseñado de tal forma que protegería adecuadamente la aplicación del Principio de Mérito de éste ser elevado a rango constitucional.[...]
> En la conceptualización [sic] del Sistema de Personal se persigue alcanzar el trato más justo y equitativo a todos los empleados públicos, y a que sean los más aptos los que sirvan al Gobierno, lo que contribuirá a producir un clima de armonía y satisfacción y a una mayor productividad y eficiencia en el servicio público puertorriqueño. [...]"[9]

La sección 2.1 de dicha ley expresa la política pública del Gobierno de Puerto Rico en relación con el personal del servicio público de la siguiente manera:

---

[8]Ley Núm. 5 de 14 de octubre de 1975, 3 L.P.R.A. sec. 1301 et seq.

[9]Exposición de Motivos de la Ley de Personal, supra. Leyes y

"[...](1)Establecer el mérito como el principio que regirá todo el servicio público, de modo que sean los más aptos los que sirvan al Gobierno y que todo empleado sea seleccionado, adiestrado, ascendido y retenido en su empleo en consideración al mérito y a la capacidad, sin discrimen por razones de raza, color, sexo, nacimiento, edad, origen o condición social, ni por ideas políticas o religiosas.[...]"[10]

Asimismo, el Artículo 16 de la Ley de Personal, supra, define el Principio de Mérito como el "...concepto de que todos los empleados públicos deben ser seleccionados, ascendidos, retenidos y tratados en todo lo referente a su empleo sobre la base de la capacidad, sin discrimen por razones de raza, color, sexo, nacimiento, edad, origen o condición social, ni a sus ideas políticas o religiosas."[11]

De los estatutos anteriormente transcritos surge con meridiana claridad que el propósito cardinal de la Ley de Personal, supra, fue el de establecer el Principio de Mérito como el instrumento de medición al determinar a qué candidato ha de otorgársele una plaza de carrera disponible en el servicio público.

La sección 4.7 de la Ley de Personal, supra, ordena que las autoridades se abstengan de efectuar cualquier transacción de personal que envuelva las áreas esenciales al principio de mérito durante los períodos de dos meses pre y post eleccionarios. Esta prohibición "...es salvaguarda por excelencia del principio de mérito que rige el servicio público, detente legislado para los cuatro meses en que por llegar a máxima efervescencia las pasiones políticas, pueden las flaquezas humanas traducidas a bondad para los partidarios o represalia contra el adversario, determinar cambios en el personal extraños y opuestos al fundamental principio." *Ortiz v. Alcalde de Aguadilla*, 107 D.P.R. 819, 824 (1978). Su propósito cardinal es eliminar el peligro de que una administración incumbente lleve a cabo transacciones de personal durante dicho período que no estén basadas en el Principio de Mérito. Es una salvaguarda al Principio de

---

Resoluciones de Puerto Rico 1975, Parte 2, págs. 801-802.
[10]3 L.P.R.A sec. 1311.

Mérito especialmente diseñada para un período de tiempo que se presta a la violación del principio tan celosamente protegido por la Ley de Personal, supra. Además, la Sec. 4.7, 3 L.P.R.A. sec. 1337, de dicha ley le confiere a la prohibición el carácter de absoluta[12].

La Ley de Personal no es de aplicación a las corporaciones públicas que funcionan como negocios privados,[13] como es el caso de la Autoridad.[14]  Sin embargo, en numerosas ocasiones hemos establecido que las agencias excluidas están obligadas a reglamentar los asuntos del personal no cubierto de forma tal que se proteja y garantice el Principio de Mérito como rector de

todo lo relacionado a la administración de su personal gerencial. *Torres Solano v. PRTC*, 127 D.P.R. 499, 512 (1990); *Román v. Ramos*, 127 D.P.R. 601 (1990); *McCrillis v. Autoridad*, 123 D.P.R. 113 (1989); *Ortiz v. Departamento de Hacienda*, 120 D.P.R. 216 (1987); *Laboy v. E.L.A.*, 115 D.P.R. 190 (1984); *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982); *Reyes Coreano v. Director Ejecutivo*, 110 D.P.R. 40 (1980).  Es decir, dichas agencias tienen la obligación de implementar y proteger en sus reglamentos el Principio de Mérito en todos sus extremos, tal y como fue visualizado por nuestra Legislatura, incluyendo, por supuesto, las disposiciones referentes a la veda electoral. A esos efectos la Autoridad aprobó un Reglamento de Personal.[15]

### A

La sección 4.7 de la Ley de Personal, supra, hace referencia a que "... las autoridades deberán abstenerse de efectuar cualquier transacción  de personal...". Sin embargo, el Reglamento de la Autoridad dispone que "...el Director Ejecutivo  se abstendrá  de efectuar..."las

---

[11]Sección 8 de la Ley de Personal, 3 L.P.R.A. sec. 1411(7).

[12]Sólo son aceptadas como excepción las transacciones de personal en que el abstenerse de efectuarlas afectaría adversamente los servicios que se prestan en programas especiales. Sección 4.7 de la Ley de Personal, supra.

[13]3 L.P.R.A. sec. 1338 (3).

[14]*Unión Asociación de Empleados v. J.R.T.*, 119 D.P.R. 116 (1987).

[15]Reglamento Núm.: 02-005. Enmendado el 6 de agosto de 1992.

transacciones prohibidas. Es evidente que la prohibición de la Ley de Personal es más abarcadora que la del reglamento. Reconoce el hecho de que las autoridades encargadas de seleccionar a sus empleados no son solamente los directores de las agencias o departamentos gubernamentales. Sería irrazonable concluir que la Legislatura quiso prohibir que los directores tomasen decisiones de personal en las que estuviesen envueltos asuntos de índole política, pero que permitiera que dichas decisiones sí sean tomadas por otros funcionarios públicos de menor jerarquía.

El hecho de que el Reglamento de Personal de la autoridad fue aprobado por la Oficina Central de Administración de Personal (O.C.A.P.) no tiene el efecto determinante de comprobar la incorporación cabal y correcta de lo dispuesto en la sección 4.7 de la Ley de Personal.  El sentido común, un análisis correcto y una comparación de los estatutos demuestra lo contrario.

Hay que recordar que las Agencias no cubiertas por la Ley de Personal tienen la obligación de incorporar en sus reglamentos el Principio de Mérito según éste fue visualizado por la Legislatura.  De una comparación de los citados estatutos resalta la verdadera intención legislativa y es a la luz de ella que debemos interpretar el Reglamento de Personal de la Autoridad. Siendo ello así, forzoso es concluir que la prohibición de la veda electoral cubre no sólo al Director de la Agencia, sino a cualquier empleado de ésta que tenga la autoridad de tomar decisiones relacionadas con transacciones de personal.  De no ser así, la protección al Principio de Mérito provista por la veda electoral resultaría un absurdo sin fuerza alguna para defender tan honorable y fundamental principio.

La veda electoral va dirigida a evitar que las decisiones relativas a las transacciones de personal se vean afectadas por criterios ajenos al mérito.  Sabido es también que hoy día muchas de las decisiones relativas al personal no son tomadas por los directores de agencias, sino por subalternos a ellos.

De la situación fáctica del caso de autos se desprende claramente el absurdo que sería sostener que solamente se prohíben las transacciones de personal llevadas a cabo por el Director de la Agencia. ¿Quién determinó que Zambrana era la solicitante de mayor mérito? El supervisor de personal a cargo de ello en la agencia. ¿Quién examinaba su progreso y desempeño en el puesto con carácter probatorio? Su supervisora, la jefe de la Oficina de Personal. ¿En qué consistió la intervención del Director de la Agencia? Meramente en notificarle su nombramiento y aprobación del período probatorio. Es evidente que la "autoridad nominadora" incluye toda aquella persona que, actuando por delegación de poderes del Director Ejecutivo de la agencia, tome alguna decisión que constituya una transacción de personal, como es la evaluación final para el nombramiento de un empleado de carrera luego de su período probatorio. De hecho, la Ley de Personal reconoce que el término "autoridad nominadora" incluye a cualquier funcionario o agencia[16] con facultad legal para hacer nombramientos para puestos en el Gobierno. 3 L.P.R.A. sec. 1411 (5).

Seríamos muy ingenuos si estimásemos que el legislador, intentando defender el Principio de Mérito, permitiera que subalternos –cuyas motivaciones al efectuar las transacciones de personal en período eleccionario podrían estar igualmente viciadas que las del jefe de la agencia– tomasen decisiones que al director de la agencia le están prohibidas. La veda electoral va dirigida a prohibir la toma de decisiones sobre transacciones de personal, salvaguardando así el Principio de Mérito, y no meramente la toma de decisiones por una persona en específico, más aún cuando esa persona ha delegado en otros la función de evaluar un empleado a los fines de determinar lo que corresponda respecto a su nombramiento. Decidir lo contrario sería

---

[16]La Ley de Personal define agencia como el conjunto de funciones, cargos y puestos que constituyen toda la jurisdicción de una autoridad nominadora, independientemente de que se le denomine departamento, municipio, corporación pública, oficina, administración, comisión, junta, tribunal, o de cualquier otra forma. 3 L.P.R.A. 1411 (6).

crear una peligrosa brecha en tan importante protección al Principio de Mérito.

B

Se plantea si una evaluación del desempeño laboral de un empleado en período probatorio constituye o no una de las transacciones de personal proscritas durante el período de veda electoral. Concluimos en la afirmativa.

Establece la sección 4.7 de la Ley de Personal y el Artículo 21 del Reglamento de Personal de la Autoridad, que a los fines de asegurar la fiel aplicación del Principio de Mérito en el servicio público durante los períodos pre y post eleccionarios, no se efectuarán transacciones de personal que envuelvan las áreas esenciales al Principio de Mérito tales como nombramientos, ascensos, descensos, traslados, y cambios de categorías de empleados. Resulta evidente que los ejemplos transcritos en las referidas disposiciones guardan elementos en común: (1) todas son transacciones que envuelven áreas esenciales al Principio de Mérito pues el único elemento que debe ser considerado al ser efectuadas es el mérito; (2) son transacciones cuyas motivaciones podrían verse afectadas por criterios ajenos al mérito, especialmente en períodos eleccionarios y (3) son eventos que podrían ser utilizados como recompensa o castigo por creencias y actuaciones político-partidistas.

El listado de transacciones de personal esenciales al principio de mérito contenido en la sección 4.7 de la Ley de Personal, supra, y en el Artículo 21 del Reglamento de Personal de la Autoridad[17] es uno

---

[17]La sección 4.7 de la Ley de Personal, supra, dispone que:
"A los fines de asegurar la fiel aplicación de mérito en el servicio público durante los períodos pre y post eleccionarios, las autoridades deberán abstenerse de efectuar cualquier transacción de personal que envuelva las áreas esenciales al principio de mérito, tales como nombramientos, ascensos, descensos, traslados y cambios de categoría de empleados.
[...]"
Por su parte, el Artículo 21 del Reglamento de Personal de la Autoridad establece que:

meramente ejemplificativo y no taxativo. Existen otras transacciones de personal esenciales al Principio de Mérito proscritas por la veda electoral. Lo importante para que alguna transacción de personal se considere prohibida por la veda es que la transacción goce de las mismas características que las transacciones listadas en las disposiciones transcritas, es decir, que sea una transacción de personal esencial al Principio de Mérito. Veamos si la última evaluación realizada a un empleado en período probatorio es una transacción de personal que envuelve algún área esencial a dicho principio.

Hemos visto que el Principio de Mérito se refiere al concepto de que todos los empleados públicos de carrera deben ser tratados en todo lo referente a su empleo exclusivamente sobre la base del mérito. El propósito es lograr que sólo los más aptos sean los que sirvan a nuestro gobierno.

El Reglamento de Personal de la Autoridad establece un proceso detallado que debe ser seguido cada vez que surja una vacante y ésta vaya a ser llenada. Como parte del proceso de selección de un empleado, el Artículo 10.8 del Reglamento dispone que el candidato debe completar un período probatorio durante el cual habrá de pasar por el ciclo completo de responsabilidades relacionadas con la posición que aspira a ocupar. El <u>cumplimiento satisfactorio</u> del período probatorio es una de las etapas de mayor importancia del proceso de reclutamiento.[18] Hemos

---

"A los fines de asegurar la fiel aplicación del principio de mérito en el servicio público durante períodos pre y post eleccionarios, el Director Ejecutivo se abstendrá de efectuar cualquier transacción de personal que envuelva las áreas esenciales al principio de mérito, tales como nombramientos, ascensos, descensos, traslados, adiestramientos y cambios de categoría de empleados.[...]"

[18]Dispone la sección 4.1 de la Ley de Personal, 3 L.P.R.A. sec. 1333, que:

"[...] Las siguientes serán las disposiciones generales que regirán el reclutamiento y selección del personal de carrera:

[...]

visto, además, que la determinación de si el cumplimiento del período probatorio fue o no satisfactorio habrá de hacerse a base de las evaluaciones a que el candidato estará sujeto durante dicho período. Es evidente que la formalización de cada una de estas etapas resulta indispensable a la transacción de personal que el reclutamiento representa y, por lo tanto, en su ejecución tiene que salvaguardarse el Principio de Mérito. Forzoso es concluir que las evaluaciones realizadas a un empleado de carrera en período probatorio son, a todas luces, una etapa crucial del proceso de selección[19] y, por tanto, una transacción de personal esencial al Principio de Mérito. Resolver lo contrario sería permitir que consideraciones ajenas al mérito sean tomadas en cuenta al evaluar a los empleados en períodos probatorios, especialmente en el período de veda electoral que tanto se presta para atentados en contra del Principio de Mérito. El discrimen político puede estar tan presente o más en la evaluación que en el nombramiento, pues de ser ésta favorable, el nombramiento es su consecuencia virtualmente ineludible.

Al considerar el efecto práctico de la última evaluación sobre el empleo del candidato evaluado, es evidente el carácter esencial al Principio de Mérito de dicha transacción. El inciso 7 de la sección 10.8 del Reglamento de Personal de la Autoridad dispone que los empleados que aprueben satisfactoriamente el período probatorio <u>pasarán a ocupar el puesto con carácter regular</u>. De otra parte, el inciso 6 de dicha sección del reglamento establece que el empleado podrá ser separado de su puesto en cualquier momento del período probatorio si se determinase que su progreso y adaptabilidad a las normas del

---

(c) Cumplimiento satisfactorio del período probatorio establecido para la clase de puesto.[...]
(10) Al completar satisfac-toriamente el período probatorio, el empleado pasará a ser un empleado regular de carrera.[...]"

[19]El inciso uno (1) de la Sección 10.8 del Reglamento de Personal de la Autoridad dispone que "[t]oda persona nombrada o ascendida para ocupar un puesto permanente de carrera estará sujeta al periodo probatorio de dicho puesto <u>como parte del proceso de selección en el</u>

servicio público no han sido satisfactorios. La última evaluación es en efecto una determinación de si el empleado ha de permanecer en su puesto o si ha de ser destituido.

Resulta esencial para asegurar el Principio de Mérito que todas las determinaciones que se hagan con respecto a las transacciones de personal, incluyendo las evaluaciones, se basen única y exclusivamente en ese principio. No podemos permitir que consideraciones de naturaleza política gobiernen dichas determinaciones. ¿Para qué permitir dichas evaluaciones si ellas pueden ser influenciadas por consideraciones políticas durante el período de veda electoral? ¿No estaríamos abriendo la puerta para que la administración de turno -no importa de qué partido político- realice un número considerable de nombramientos de empleados de carrera, entrado ya el año electoral, cuyo período probatorio venza, como en el caso de autos, en medio de la veda electoral, evaluarlos favorablemente en medio de la veda y obligar a la administración siguiente a cumplir con la simple formalidad de extender un nombramiento ya adjudicado por la evaluación?  Estaríamos creando una brecha ("loophole") por donde se vulnera el Principio del Mérito.

## C

El caso de *Hosp. San Pablo v. Hosp. Hnos. Meléndez*, 123 D.P.R. 720 (1989) es claramente distinguible del caso ante nuestra consideración.. Allí se trataba de la veda electoral referente al otorgamiento de unos certificados de necesidad y conveniencia para la prestación de ciertos servicios de salud.  La veda disponía que el Departamento de Salud no tomaría determinación alguna sobre ningún asunto relacionado con dichos certificados durante períodos pre y post eleccionarios.[20] El propósito de dicha veda fue evitar que en el otorgamiento de dichos certificados entraran consideraciones de índole  política,  haciendo prevalecer las necesidades del pueblo en el campo de la salud. Se alegaba que la celebración de una vista pública -llevada a cabo para la consideración

---

servicio público." (Enfasis nuestro)

[20] 24 L.P.R.A. sec. 334i-1.

de la solicitud del Hospital Hermanos Meléndez para operar una sala de cirugía cardiovascular- durante el período de veda violaba la prohibición. Nos expresamos a los efectos de que, como la Ley de Certificados de Necesidad y Conveniencia[21] establecía unos términos cortos dentro de los cuales el Secretario de Salud tenía que tomar ciertas determinaciones, era obvio que la misma consideraba que las solicitudes de certificados de necesidad y conveniencia debían tramitarse y decidirse con relativa prontitud dada la naturaleza de la reglamentación.[22] A base de ello dispusimos que la veda introducida por la Ley Núm. 139[23] no podía ser interpretada de una forma que implicara derrotar tales propósitos al adoptar una norma cuyo efecto práctico sería paralizar y congelar el Departamento de Salud.[24] Señalamos que la adjudicación final por el Secretario de Salud era la culminación de un proceso de carácter adjudicativo institucional.[25] Dicha decisión final del Secretario de Salud se fundamentaba en las diversas consideraciones de las decisiones o determinaciones interlocutorias de sus subalternos en etapas anteriores, era la etapa final del proceso y, por ende era la que estaba vedada por la Ley Núm. 139, supra, durante el período eleccionario.[26] Dictaminamos que el  Secretario de

---

[21]Ley Núm. 2 de 7 de noviembre de 1975, 24 L.P.R.A. sec. 334 et seq.

[22]Hosp. San Pablo v. Hosp. Hnos. Meléndez, supra, pág. 731.

[23]Ley que introdujo la veda electoral a la Ley de Certificados de Necesidad y Conveniencia, supra. Ley Núm. 139 de 18 de julio de 1986, 24 L.P.R.A. sec. 334i-1.

[24]Hosp. San Pablo v. Hosp. Hnos. Meléndez, supra, pág. 732.

[25]Id.

[26]Hosp. San Pablo v. Hosp. Hnos. Meléndez, supra, pág. 733.

Salud no podía, durante el período vedado, tomar alguna determinación que concediera o denegara el certificado, o que conllevara dichos efectos.[27] Entendimos que la Ley Núm. 2, supra, establecía un procedimiento administrativo de naturaleza formal que ofrecía suficientes garantías para asegurar que dicho proceso se llevara a cabo con pureza administrativa.[28] Concluimos que el proceso evaluativo llevado a cabo por los subalternos sólo conllevaba la toma de determinaciones interlocutorias a la determinación final del Secretario de Salud sobre la concesión o la denegación de un certificado de necesidad y conveniencia.[29] Sostuvimos que la vista llevada a cabo como parte de la evaluación del certificado de necesidad y conveniencia no estaba prohibida por la ley.[30]

En el caso anteriormente resumido resolvimos que los procesos evaluativos que se llevan a cabo como parte de alguna decisión final del Secretario del departamento no están sujetos a la veda electoral. Ello es distinto en el caso de autos. En primer lugar, el presente caso no trata de procesos evaluativos llevados a cabo como parte de una decisión final del Director de la Autoridad. La última evaluación del empleado en período probatorio es, en sí misma, la

---

[27]Id.

[28]Id. Entre estas garantías de ley mencionamos "que el Secretario de Salud debe hacer determinaciones de hecho que estén sostenidas por la evidencia; que ningún funcionario que desempeñe funciones en relación con las solicitudes, una vez el caso se encuentre en reconsideración o en una etapa posterior, puede comunicarse con el solicitante, su representante o con los opositores del certificado o sus representantes, en ausencia de las otras partes, so pena de incurrir en delito menos grave; que el oficial examinador hará determinaciones de hecho y conclusiones de derecho en su informe al Secretario de Salud; que las vistas serán grabadas y se velará por el cumplimiento del debido proceso de ley; que ninguna parte, incluso las personas afectadas, podrá comunicarse con el oficial examinador que presida la vista una vez ésta haya sido señalada; que el certificado puede ser revocado en cualquier momento si se demuestra que el peticionario, a sabiendas, sometió información falsa; que la decisión del Secretario de Salud debe fundamentarse en la recomendación que le hizo el oficial examinador y en la información obrante en el expediente, y que de no seguir esta recomendación, el Secretario de Salud debe exponer las razones para ello y su decisión debe estar fundamentada y sostenida por la evidencia."(Citas omitidas) *Hosp. San Pablo v. Hosp. Hnos. Meléndez*, supra, págs. 733-734.

[29]*Hosp. San Pablo v. Hosp. Hnos. Meléndez*, supra, pág. 734.

determinación final de la Autoridad. El resto, es decir, el nombramiento, es una mera formalidad. Como señalamos anteriormente, de dicha evaluación ser satisfactoria, el empleado pasará a ocupar el puesto con carácter permanente; de ser insatisfactoria, al empleado se le deniega el puesto. Además, la celebración de una vista pública no implica una decisión o evaluación que pueda verse afectada por consideraciones de índole político-partidista, como es el caso mucho más subjetivo e individualizado de la evaluación del desempeño de un empleado en período probatorio. En el primer caso –la celebración de una vista pública– no hay riesgo de que se violente el propósito de la veda electoral, como sí los hay en el caso de las evaluaciones de la labor de empleados en período probatorio realizadas durante la duración de la veda, en que el proceso no es de naturaleza adversarial, y la evaluación es determinante del nombramiento.

Es menester recalcar que en *Hosp. San Pablo v. Hosp. Hnos. Meléndez*, supra, resolvimos que lo esencial era que no se podía tomar alguna determinación que concediera o denegara el certificado. En el caso de autos el resultado de la evaluación final indudablemente equivale a una concesión o denegatoria del empleo al que se aspira, según sea el caso, excepto que se aplaza la fecha en que se formaliza la permanencia. Igualmente determinante es el riesgo de que la objetividad de la evaluación se vea afectada por consideraciones ajenas al mérito y la capacidad.

> No podemos concluir que se haya querido extender la veda a todas las etapas del proceso, pero es evidente que se quiso extender a todas las etapas en que se pueda violentar el Principio de Mérito por ella protegido, como lo es la evaluación final que culmina con el nombramiento. Lo contrario sería negar la razón de ser de la veda.

En *Hosp. San Pablo v. Hosp. Hnos. Meléndez*, supra, expresamos que la veda no puede ser interpretada de forma tal que su efecto práctico sea el de paralizar y congelar las áreas importantes del quehacer de la agencia. Sin embargo, debemos destacar que en el caso citado dichas

---

[30]Id.

expresiones se referían a que no se debía paralizar la fase procesal de la aprobación de los certificados de necesidad. No se puede comparar dicho efecto con el de un empleado, como el del caso de autos, que podría seguir prestando sus labores a la agencia durante el período de veda, aunque con carácter probatorio. No existe, por consiguiente, efecto alguno de paralización en los quehaceres importantes de la agencia.

D

Aunque el Artículo 10 del Reglamento de Personal de la Autoridad dispone que "...el período probatorio no será prorrogable.", el mismo añade que [...]"Si por cualquier razón justificada, entre otras, la concesión de algún tipo de licencia, cesantía, ascenso, traslado o descenso del empleado, se interrumpe por no más de un (1) año el periodo probatorio del empleado, se le podrá acreditar la parte del período de prueba que hubiese servido antes de la interrupción." (Enfasis suplido). La disposición transcrita no hace una mención taxativa de las razones justificadas para la interrupción del período probatorio. La propia ley ciertamente introduce la veda electoral como otro motivo justificado para la interrupción del período probatorio. Además, es la propia Ley de Personal, supra, la que establece la veda electoral como salvaguarda al Principio de Mérito, y le impone a las agencias no cubiertas por sus disposiciones la obligación de implementar dicho principio en todos sus extremos. Esto incluye, por supuesto, lo referente a la Veda Electoral.

El Reglamento de Personal de la Autoridad prohibe la prorrogación del período probatorio. No cabe duda de que, por su procedencia, la veda electoral tiene precedencia absoluta sobre las disposiciones del Reglamento de Personal de la Autoridad. Las leyes del Estado Libre Asociado de Puerto Rico son de mayor rango que los reglamentos de las agencias, más aún cuando éstos son creados en virtud de aquellas. Este conflicto ha de resolverse, no limitando el efecto que el legislador quiso darle a la veda electoral, sino interpretando las disposiciones

reglamentarias de la Agencia para atemperarlas a la Ley de Personal. A esos efectos la Autoridad debe abstenerse de realizar la evaluación final de un empleado de carrera en período probatorio hasta tanto termine la veda electoral. Ello no conlleva, que el empleado quede en un "limbo" en cuanto a su status en la agencia. Seguirá siendo un empleado probatorio hasta tanto se pueda realizar la última evaluación de su desempeño. Ello con el tan obvio propósito de salvaguardar el Principio de Mérito en el período cubierto por la veda electoral.

E

Extender la veda a la última evaluación del empleado en período probatorio no representa una intromisión con el proceso formal de nombramientos de la agencia. Reiteramos la precedencia de la Ley de Personal, que es la que, en primer término, ordena la veda electoral, sobre el Reglamento de Personal de la Autoridad, que incorpora sus requisitos. Además, tanto el proceso administrativo como la veda electoral fueron creados para proveer garantías de pureza administrativa.

F

La Carta Normativa Especial Núm. 1-96 de 26 de julio de 1996 emitida por la O.C.A.P. indica que se autoriza a las autoridades nominadoras a efectuar, durante el período de veda electoral, las evaluaciones periódicas y finales de los empleados que se encuentran en período probatorio. Hemos resuelto que la interpretación administrativa que una agencia le otorga a la ley que le toca implementar merece gran peso y deferencia.[31] Ello no obstante, se exceptúa de dicha regla general los casos en que la interpretación es contraria a la ley. *Asoc. Médica de P.R. v. Cruz Azul*, supra.

> La Carta Normativa Especial Núm. 2-92, emitida por la O.C.A.P. el 6 de marzo de 1992, es la que tenía vigencia al momento en que ocurrieron los hechos relevantes al presente caso. Esta Carta Normativa Especial, en lo referente a las transacciones de personal proscritas por la veda electoral, disponía que:

---

[31]Véase *Vázquez v. A.R.P.E.*, 128 D.P.R. 513 (1991); *De Jesús v. Depto. de Servicios Sociales*, 123 D.P.R. 407 (1989); *Asoc. Médica de P.R. v. Cruz Azul,* 118 D.P.R. 669 (1987).

"[...] Por otra parte, en el cumplimiento del mandato de ley las autoridades nominadoras se abstendrán de efectuar acciones de personal en las áreas de:
[...] 2. Reclutamiento y Selección – Se incluye todo proceso y tipo de nombramiento y la aprobación del período probatorio."(Enfasis suplido).

Sea esta carta normativa directiva o mandatoria para una agencia como la del caso de autos, la violación a su directriz es clara. Además, lo importante es la interpretación hecha y no el carácter de su efecto.  Las acciones que la O.C.A.P. entendía que estaban proscritas están claramente expresadas en dicha Carta Normativa.  No podían aprobar el período probatorio.  La prohibición no se refiere exclusivamente a conceder la permanencia ni a la mera formalidad en dicha transacción envuelta.  Menciona expresamente la aprobación del período probatorio, que, como hemos visto, se refiere a la última evaluación.

Dicha interpretación es cónsona, no sólo con lo que aquí hemos expresado, sino con el propósito real de la veda electoral y con la protección que ésta le brinda al Principio de Mérito. La aplicación al presente caso de la Carta Normativa Especial posterior es una de naturaleza claramente retroactiva, lo que violenta nuestros más básicos principios de derecho.  ¿Y qué si mañana emite la O.C.A.P. una nueva carta normativa reiterando su posición del 1992?  Lo verdaderamente importante es determinar cuál interpretación es la correcta.  Hemos visto que, aplicando los principios fundamentales de derecho envueltos en este asunto, la realización de la última evaluación del período probatorio se encuentra prohibida por la veda electoral.

Es menester señalar que, aunque del expediente nada surge que pruebe o sugiera que la aprobación del período probatorio de la Sra. Zambrana haya sido un favor político, ello no afecta, ni puede afectar, nuestra posición. "La severidad de la prohibición que toma cuerpo en la diáfana redacción del estatuto [que establece la veda electoral], no queda enervada por los buenos propósitos de la autoridad nominadora."[32]

---

[32]*Ortiz v. Alcalde de Aguadilla*, supra.

Por los fundamentos anteriormente expuestos, expresamos nuestra conformidad con la Sentencia que hemos dictado.


                              BALTASAR CORRADA DEL RIO
                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


ROXANA M. ZAMBRANA TORRES

    Demandante


      vs.                              CT-97-1        CERTIFICACION


SERGIO L. GONZALEZ Y OTROS

    Demandados


Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI, a la que se unen el Juez Presidente señor Andréu García y la Juez Asociada señora Naveira de Rodón.


San Juan, Puerto Rico, a 10 de junio de 1998.


En el caso de autos, cuatro Jueces del Tribunal supuestamente concurren en un mismo resultado, aunque sostienen criterios muy diversos entre sí. No hay opinión del Tribunal que sea vinculante y que establezca precedente, debido a que no existen entre nosotros criterios y fundamentos sobre el asunto que nos concierne aquí, que sean mayoritarios.

Las diversas posturas de los cuatro Jueces que autorizan la sentencia en este caso son todas claramente contrarias a lo pautado en una opinión anterior de este Tribunal, que sí es vinculante. Aunque la sentencia en el caso de autos no revoca la

opinión de <u>Hosp. San Pablo v. Hosp. Hnos. Meléndez</u>, 123 D.P.R. 720 (1989), el resultado al que llegan cuatro Jueces de este Foro en esta sentencia, **no es compatible** con los autorizados pronunciamientos emitidos en dicha opinión. **La opinión referida sigue siendo la única expresión mayoritaria de este Foro que es vinculante respecto al asunto de marras**. Por ello, es dicha opinión la que debe guiar al tribunal federal al emitir su dictamen final en este caso.[33]

El resultado al que supuestamente llegan cuatro Jueces en el caso de autos es desacertado, además, por su patente y contradictoria injusticia. En nombre de hacer más riguroso el principio de mérito en el servicio público, se convalida un claro atropello partidista. Los hechos que aquí nos conciernen constituyen un caso claro de un abusivo **despido por discrimen político**.   Darle carta blanca a tal ilícita actuación gubernamental, supuestamente para fortalecer un mecanismo que existe precisamente para conjurar tales decisiones partidistas, no tiene sentido jurídico.   Se desacredita el mecanismo protector en cuestión cuando se invoca para convalidar precisamente lo que se quiso evitar con éste.   Se vira al revés su propósito y razón de ser.   Y

se comete, además, una grave injusticia con la persona despedida por razones puramente políticas. Veamos.

I

El asunto que nos toca resolver es si la veda electoral prohíbe realizar dentro de ese tiempo la última fase de la evaluación del desempeño laboral de un empleado de carrera, que ya tenía aprobado tres cuartas partes del período probatorio del cargo que ocupaba.

---

[33] Como se sabe, una <u>sentencia</u> del Tribunal Supremo no establece norma.   No constituye autoridad o precedente, por lo que no es apropiado citarlas.   Cuando este Tribunal pauta normas, así como la interpretación vinculante de cualquier disposición legal, lo hace mediante dictamen sostenido por una <u>opinión</u>. <u>Rivera Maldonado v. E.L.A.</u>, 119 D.P.R. 74, 79-80 (1987); <u>Figueroa Mendez v. Tribunal Superior</u>, 101 D.P.R. 859, 862-863 (1974).

El caso de autos nos llega en virtud del procedimiento de certificación interjurisdiccional establecido por la Regla 53.1(f) de Procedimiento Civil de Puerto Rico.  Mediante resolución del 21 de abril de 1997, el Tribunal de Distrito de los Estados Unidos, Distrito de Puerto Rico, nos presentó una solicitud de certificación, que acogimos el 15 de agosto de 1997, por entender que cumplía con todos los requisitos pertinentes.  Pan American Computer Corp. v. Data General Corp., 112 D.P.R. 780 (1982).

La cuestión certificada por el foro federal fue la siguiente:

> "whether plaintiff Roxana M. Zambrana Torres' approval of a probationary period during the electoral prohibition period constitutes a personnel transaction within the merit principle of the Public Personnel Law of P.R."

## II

Roxana Zambrana Torres comenzó a trabajar como Oficial Ejecutivo I en la Autoridad de Carreteras de Puerto Rico el 3 de junio de 1991.  Diez meses más tarde, el 9 de abril de 1992, dicha agencia publicó una convocatoria de empleo para la posición de Director de la Oficina de Relaciones Laborales.  A esa convocatoria respondieron cinco candidatos, entre ellos Zambrana, quien el 27 de abril presentó su solicitud para el puesto referido.  El 5 de mayo de ese año, **luego de la evaluación correspondiente**, el supervisor de personal a cargo de ello en la agencia, determinó que Zambrana era la solicitante de mayor mérito y certificó que ésta cumplía con todos los requisitos del puesto aludido, por lo que el 18 de mayo de 1992 el Director Ejecutivo de la Autoridad de Carreteras notificó a Zambrana su nombramiento como nueva Directora de Relaciones Laborales de la Autoridad.

El referido nombramiento de Zambrana estaba sujeto a un período probatorio de cuatro (4) meses, que comenzó a decursar el 18 de mayo de 1992 y que se extendía hasta el 18 de septiembre de ese año.  Durante el período en cuestión, Zambrana fue evaluada por su supervisora, la

jefe de la Oficina de Personal, en tres ocasiones, **y recibió calificaciones sobresalientes en todas ellas**. La primera evaluación, que abarcaba el primer mes en el cargo, concluyó el 18 de junio de 1992; la segunda evaluación, que abarcaba los próximos dos meses en el cargo, concluyó el 18 de agosto de 1992. La tercera evaluación, que es la que nos concierne aquí, y que abarcaba el cuarto mes en el cargo, concluyó el 18 de septiembre de 1992. Tal como se había hecho en las evaluaciones anteriores, ese mismo día la supervisora rindió el informe de evaluación correspondiente, en el que consignó que Zambrana se había desempeñado de manera **sobresaliente** en todos los diez (10) aspectos o factores de su evaluación.

El 8 de octubre de 1992, el Director Ejecutivo de la Autoridad de Carreteras le notificó formalmente a Zambrana que ella había completado satisfactoriamente el período probatorio para el puesto de Directora de Relaciones Laborales. Le indicó, además, que por tal razón:

> "...usted cumplió con los requisitos para ocupar el referido puesto con carácter permanente efectivo el 18 de septiembre de 1992. <u>No obstante, el trámite será efectuado el 3 de enero de 1993, luego de concluida la moratoria pre y post eleccionaria</u>." (Enfasis suplido).

Como puede observarse, de ordinario, Zambrana hubiese sido designada para ocupar el cargo en cuestión <u>con carácter permanente</u> tan pronto hubiese concluido satisfactoriamente el período probatorio. En este caso, sin embargo, ello no se hizo de inmediato, por razón de la veda electoral. Una vez concluida dicha veda, durante el mes de enero de 1993, Zambrana comenzó a desempeñar sus tareas como Directora de Relaciones Laborales, sin ningún incidente.

Así las cosas, el 9 de julio de 1993, el nuevo Director Ejecutivo de la Autoridad de Carreteras, nombrado en virtud del cambio de administración acontecido por razón del resultado de las elecciones del 2 de noviembre de 1992, le envió una carta a Zambrana informándole que, según una investigación de su expediente personal, su nombramiento como Directora de Relaciones Laborales era contrario al reglamento de

personal de la Autoridad.  En dicha carta se le concedía a Zambrana un término de veinte (20) días para contestar las imputaciones que allí se formulaban.

Luego de varios trámites procesales, que no es menester relatar aquí, el 4 de marzo de 1994 el Director Ejecutivo de la Autoridad de Carreteras destituyó a Zambrana de su cargo, sobre la base de que su nombramiento había sido nulo.  Posteriormente, Zambrana presentó una acción civil en el Tribunal de Distrito federal de Puerto Rico, alegando inter alia que había sido despedida mediante discrimen político, y que desde que la nueva administración se hizo cargo de la Autoridad de Carreteras, ella había sufrido un patrón de hostigamiento y persecución política en su trabajo.

En su resolución del 21 de abril de 1997, el foro federal, al solicitar la certificación mencionada antes, señaló que para poder resolver la referida acción civil de Zambrana, era necesario determinar antes si, en efecto, su nombramiento como Directora de Relaciones Laborales fue válido o no.  Específicamente, la cuestión ante nos es si bajo nuestro ordenamiento jurídico tal nombramiento es nulo, porque la última cuarta parte del período probatorio de dicho nombramiento se completó durante el tiempo de veda electoral, que comenzó el 2 de septiembre de 1992 y terminó el 3 de enero de 1993.


III

Hemos reconocido anteriormente que Puerto Rico es uno de los pocos países cuyo ordenamiento jurídico contiene unos períodos de veda pre y post eleccionaria, durante los cuales el Estado se autolimita en la realización de determinados actos, para así asegurar la pureza de sus funciones en esos períodos.  Hosp. San Pablo v. Hosp. Hnos. Meléndez, 123 D.P.R. 720 (1989).  En la vertiente que aquí nos concierne, la veda aludida se ha concebido como un elemento del principio de mérito que rige el servicio público; un detente legislado para los cuatro meses del año de elecciones en los cuales las pasiones políticas llegan a su

máxima efervescencia, y pueden dar lugar, si la veda no existiera, a cambios en el personal del servicio público, que son extraños y opuestos al fundamental principio de mérito. Ortiz v. Alcalde de Aguadilla, 107 D.P.R. 819 (1978).

La veda electoral, en lo que respecta a su fundamental vertiente relativa a las transacciones de personal en el servicio público del país, está establecida en la sección 4.7 de la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1337.[34] Dicha sección 4.7 es una de las varias disposiciones afines de la Ley de Personal, que aparecen en secuencia en el texto de ésta, y que establecen qué les está permitido y qué les está prohibido específicamente a las **autoridades nominadoras** del Gobierno respecto a la creación de puestos, el reclutamiento y selección de personal, la destitución de empleados y otras transacciones de personal. 3 L.P.R.A. secciones 1332, 1333, 1336, 1337 y 1411.

Como se sabe, aun las corporaciones públicas que funcionan como negocios privados --como lo es en la actualidad la Autoridad de Carreteras, Unión Asociación de Empleados v. J.R.T., 119 D.P.R. 116 (1987)-- deben observar el principio de mérito en lo relacionado a los asuntos de personal de los empleados no unionados. Aunque tales corporaciones están excluidas como tal del sistema de personal establecido por la Ley de Personal, quedaron obligadas, no obstante, a partir de 1975, a adoptar un reglamento de personal que incorpore el principio de mérito para sus empleados gerenciales. Torres Solano v. P.R.T.C., 127 D.P.R. 499 (1990); McCrillis v. Autoridad de Navieras de

---

[34] La sección 4.7 de la Ley de Personal, supra, dispone en parte que:

> "A los fines de asegurar la fiel aplicación de mérito en el servicio público durante períodos pre y post eleccionarios, las autoridades deberán abstenerse de efectuar cualquier transacción de personal que envuelva las áreas esenciales al principio de mérito, tales como nombramientos, ascensos, descensos, traslados y cambios de categorías de empleados."

P.R., 123 D.P.R. 113 (1989); Torres Ponce v. Jiménez, 113 D.P.R. 58 (1982).

Conforme a lo dispuesto sobre personal en la legislación que creó a la Autoridad de Carreteras en 1965, 9 L.P.R.A. sec. 2007, y a lo dispuesto en la citada Ley de Personal del Servicio Público de Puerto Rico respecto a Administradores Individuales[35], 3 L.P.R.A. secciones 1343, 1347 y 1353, la Autoridad de Carreteras adoptó por primera vez un Reglamento de Personal el 22 de julio de 1980, para acoger el principio de mérito en dicha agencia. **El Reglamento comenzó a regir en la fecha en que fue aprobado por el Director de la Oficina Central de Administración de Personal (OCAP)**, según lo requería la Ley de Personal.

El Artículo 16 del referido Reglamento disponía, en lo pertinente, que

> "A los fines de asegurar la fiel aplicación del principio de mérito en el servicio público durante períodos pre y post eleccionarios, el Director Ejecutivo se abstendrá de efectuar cualquier transacción de personal que envuelva las áreas esenciales al principio de mérito, tales como nombramientos, ascensos, descensos, traslados y cambios de categoría de empleado." (Enfasis suplido).

El Artículo 16 aludido incorporaba cabalmente lo dispuesto en la aludida sección 4.7 de la Ley de Personal, 3 L.P.R.A. sec. 1337, en lo referente a la veda electoral. Por ello mereció la aprobación expresa del Director de OCAP, quien tiene primordialmente la responsabilidad de velar porque se cumpla con la política pública del país en relación al principio de mérito. 3 L.P.R.A. sec. 1323. En el Artículo 16 referido, la veda electoral recaía específicamente sobre **el Director Ejecutivo de la Autoridad de Carretera**, conforme lo expresamente dispuesto en la Ley de Personal, en la cual la veda aludida, al igual que todas las otras facultades y prohibiciones pertinentes, están dirigidas precisamente **a "las autoridades nominadoras"** (véase 3 L.P.R.A. secciones 1332, 1333, 1336, 1337 y 1411). En la agencia que

---

[35] La Autoridad de Carreteras, conforme la legislación vigente entonces, se consideraba un Administrador Individual. Véase, la Introducción del Reglamento de Personal de la Autoridad de Carreteras de 22 de julio de 1980.

nos concierne, la autoridad nominadora era el **Director Ejecutivo**. Art. 17 del Reglamento de Personal de 1980.

El Reglamento de Personal de 1980 referido fue sustituido por otro reglamento similar, aprobado el 6 de agosto de 1992, que es el que estaba vigente al ocurrir los hechos del caso de autos. El Reglamento de Personal de la Autoridad de Carreteras de 1992 (Reglamento), en lo que aquí nos concierne, es esencialmente igual al de 1980. En lo pertinente, su Artículo 21 dispone lo siguiente:

> "A los fines de asegurar la fiel aplicación del principio de mérito en el servicio público durante períodos pre y post eleccionarios, el Director Ejecutivo se abstendrá de efectuar cualquier transacción de personal que envuelva las áreas esenciales al principio de mérito, tales como nombramientos, ascensos, descensos, traslados, adiestramientos y cambios de categoría de empleados." (Enfasis suplido).

A la luz de lo dispuesto en el artículo en cuestión, que es la única norma concreta que rige en el caso de autos, **cuya validez nadie ha cuestionado**, en derecho es claro que el evento que aquí nos concierne --la tercera evaluación de Zambrana por su supervisora durante el período probatorio-- no es una de las "transacciones de personal" prohibidas por la veda electoral. Examinemos porqué es ello así.

En primer lugar, es evidente que dicho evento no lo realizó el Director Ejecutivo, a quien va dirigida la veda específicamente, según se ha señalado ya. El nombramiento inicial lo hizo el Director Ejecutivo de la Autoridad de Carreteras. Sólo él tenía la facultad de hacerlo, por ser la autoridad nominadora de la agencia. La evaluación de la labor de Zambrana que aquí nos concierne, sin embargo, la realizó una supervisora, quien no estaba sujeta a la veda. La veda, como se indicó antes, **está textualmente dirigida sólo a los actos concretos de la autoridad nominadora**. No se extiende a otros funcionarios de la agencia. La veda

atañe sólo a la alta dirección de la agencia, porque es a ese nivel donde ocurren las decisiones importantes específicamente previstas en la veda.

Es menester enfatizar aquí que, como bien se señaló en Reyes Coreano v. Director Ejecutivo, 110 D.P.R. 40 (1980), a la pág. 67, la veda electoral "no es de rango constitucional, sino estatutario, por lo que hay que aplicarla en el marco trazado por el legislador", sin extenderla más allá de lo fijado por éste.

En segundo lugar, el evento que nos concierne aquí tampoco está prohibido por la veda electoral aludida porque no es una de las "transacciones de personal" incluidas en dicha veda. Por un lado, es claro que el evento que nos concierne aquí no constituía en sí un "nombramiento". El nombramiento de Zambrana con carácter probatorio se hizo específicamente el 18 de mayo de 1992 --antes del período de veda-- y se ratificó con carácter permanente en enero de 1993, luego del período de veda. La evaluación como tal no constituye un nombramiento.

La evaluación en cuestión tampoco constituía un "cambio de categoría de empleado", debido a que este concepto se refiere al cambio que ocurre cuando un empleado de carrera adviene a un cargo de confianza o viceversa. El Artículo 8 del Reglamento de Personal de la Autoridad de Carreteras[36] recoge lo dispuesto sobre el particular en la Ley de Personal de Puerto Rico, que establece solamente dos (2) categorías de empleados públicos: de confianza y de carrera. Así lo hemos reconocido expresamente antes. Flores Román v. Ramos González, 127 D.P.R. 601, 607 (1990). Por ello, un "cambio de categorías" se refiere al traslado de un puesto de confianza a uno de carrera o viceversa. Ello no fue lo que ocurrió en el caso de autos.

---

[36] El referido artículo 8 lee así, en lo pertinente:

"ARTICULO 8 - CATEGORIAS DE EMPLEADOS

El personal de la Autoridad estará comprendido en los servicios de carrera y confianza."

Más aun, la evaluación aludida obviamente no es un "ascenso", "descenso", "traslado" o "adiestramiento", que son los otros eventos relativos al principio de mérito, expresamente identificados en las disposiciones estatutaria y reglamentaria sobre veda electoral. Dicha evaluación tampoco participa de la naturaleza de los eventos expresamente identificados en las disposiciones aludidas. Una tercera evaluación de la labor que realiza un empleado en período probatorio no es intrínsecamente un "área esencial al principio de mérito" como lo son evidentemente los nombramientos, ascensos, descensos, traslados y otros eventos especificados ilustrativamente en las disposiciones sobre veda electoral. No tiene la envergadura de éstos. Es sólo una fase de un extenso y elaborado proceso para aquilatar los méritos del empleado, que incluye varias otras evaluaciones. De ningún modo es esta tercera fase por sí sola determinativa del nombramiento permanente. Dicha tercera fase cubría el desempeño del empleado sólo durante una cuarta parte --el cuarto mes-- del período probatorio. La evaluación básica inicial para el reclutamiento, y las evaluaciones del desempeño durante tres cuartas partes del período probatorio habían ocurrido todas ya. Por tanto, el evento que nos concierne no tiene ni el alcance ni el carácter dispositivo que tienen las transacciones de personal expresamente enumeradas en la veda.

En resumen, pues, es patente que una evaluación parcial como la del caso de autos, realizada, no por la autoridad nominadora sino por un supervisor del desempeño laboral de un empleado de carrera en período probatorio, no es una de las "transacciones de personal" contempladas normativamente como proscritas para el jefe de la agencia durante el período de veda electoral. No constituye tal evaluación ninguno de los tipos de decisiones gerenciales prohibidas durante los períodos pre y post eleccionarios, contempladas en las disposiciones ya citadas. No tenemos la facultad, bajo el pretexto de interpretar una norma, de añadirle a ésta limitaciones o restricciones que no aparecen en su texto, cuando éste es claro. Ríos Colón v. F.S.E., op. de 11 de

octubre de 1995, 139 D.P.R. ___, 95 JTS 133; Román Mayol v. Tribunal Superior, 101 D.P.R. 807 (1973); Román v. Superintendente de la Policía, 93 D.P.R. 685 (1966); Meléndez v. Tribunal Superior, 90 D.P.R. 656 (1964).

Es menester señalar que, aunque en otro contexto, ya habíamos resuelto antes, que los **procesos evaluativos** que se llevan a cabo en un departamento de gobierno como parte de alguna decisión final del Secretario del departamento **no están sujetos a la veda electoral**, aunque tal decisión final sí lo esté. Hosp. San Pablo v. Hosp. Hnos. Meléndez, supra. Resolvimos allí que tal decisión final que hace el más alto funcionario gubernamental, que es la culminación o etapa final de un proceso institucional, es la que está vedada, pero no las decisiones o determinaciones interlocutorias tomadas por subalternos en etapas anteriores en dicho proceso institucional. Id., a las págs. 732-733. Explicamos en dicha ocasión que la veda electoral no pretendía "congelar el funcionamiento del Gobierno, sino establecer unas medidas de autolimitación razonables." Id., a la pág. 731.

Nuestros pronunciamientos en Hosp. San Pablo v. Hosp. Hnos. Meléndez, supra, son claramente aplicables al caso de autos, por analogía. En este caso, está en cuestión precisamente una fase del proceso de evaluación de un empleado en período probatorio. Se trata de una determinación interlocutoria hecha por un subalterno, que no constituye la decisión final por el jefe de la agencia, que es la que está vedada. Como ya hemos indicado, los pronunciamientos normativos citados, que hicimos en Hosp. San Pablo v. Hosp. Hnos. Meléndez, supra, los formulamos en ocasión de la aplicación de la veda electoral a una determinación administrativa particular, que es distinta a la que nos concierne concretamente en el caso de autos. Ello, sin embargo, no les resta valor de precedente a dichos pronunciamientos. Allí como aquí pasamos juicio sobre el alcance **de una misma veda electoral y de una norma común** sobre el particular. Lo resuelto allí es claramente

aplicable al caso de autos, ya que el asunto en ambos es esencialmente el mismo, y los intereses públicos afectados son de igual importancia.

Debe reiterarse que lo que tenemos ante nos es sólo una etapa de un proceso institucional de decisión gerencial que abarca varios meses. El proceso incluye varias etapas, a saber:  primero se convoca a los interesados a solicitar el puesto en cuestión; luego se evalúan los méritos de las solicitudes para determinar si los candidatos satisfacen los requisitos del cargo; entonces se nombra el mejor candidato, con carácter probatorio; luego se pasa a una serie de evaluaciones del desempeño de la persona en el cargo; y, finalmente se le otorga carácter permanente al nombramiento.  Se trata de un proceso que puede durar siete (7) meses, como sucedió en el caso de autos.

No hay fundamentos para suponer que el legislador quiso extender la veda electoral a todas las etapas del proceso aludido, **sobre todo cuando ello tendría el efecto práctico de interrumpir significativamente el nombramiento de funcionarios gubernamentales durante todo el año electoral**.  Como indicamos en Hosp. San Pablo v. Hosp. Hnos. Meléndez, supra, "la intención legislativa no fue prohibir las... determinaciones interlocutorias en etapas [del] proceso... institucional" que son anteriores a la decisión final del jefe de la agencia, que es la que está prohibida por la veda.  Dicha veda "no puede ser interpretada de una forma... cuyo efecto práctico conlleve la paralización y congelación..." de áreas importantes del quehacer de la agencia.  Id., a la pág. 732.

En el caso de autos, además, suponer que la veda electoral se extiende a la última evaluación del desempeño de un empleado en status probatorio significaría que su período probatorio se extendería por un tiempo mayor al pautado para éste, lo que constituiría una violación al Reglamento de la Autoridad de Carreteras.  El período probatorio fijado para la clase de cargo en cuestión era de cuatro meses de duración; y el Artículo 10 del Reglamento aludido expresamente dispone que "el período probatorio no será prorrogable".

Debe enfatizarse que extender la veda a la evaluación aludida representaría una crasa intromisión con los procesos internos de la agencia. Para apreciar cabalmente porqué es ello así, debe tenerse en cuenta el entramado reglamentario sobre nombramientos como el fue marras. El empleado en cuestión es nombrado inicialmente al puesto permanente de carrera **sólo en carácter probatorio**. Durante los cuatro (4) meses que dura el período probatorio, el empleado sólo tiene dicho status o cargo en la agencia. En ese período el desempeño del empleado está constantemente bajo evaluación. Ese es precisamente el sentido de dicho período. Al finalizar el período probatorio, el empleado tiene **que ser separado de su puesto si su desempeño durante éste no fue satisfactorio**. Es decir, el nombramiento **expira** al concluir dicho período, si el desempeño no fue satisfactorio. Véase, la Sección 10.8 del Reglamento de Personal de la Autoridad de Carreteras de 1992.

Como puede observarse, si la veda electoral se extendiese incluso a sólo una fase del período probatorio, se crearía una situación anómala en cuanto al empleado en cuestión. Su nombramiento entonces en efecto quedaría **en suspenso**, al interrumpirse la **probación** que debe realizarse durante ese tiempo. El empleado quedaría en un limbo en lo que respecta a su status en la agencia, debido a que no sería ni un empleado regular ni tampoco un empleado probatorio. ¿Qué se hace entonces con dicho empleado? ¿Puede mantenerse en el empleo a pesar de no tener ninguno de los dos tipos de nombramientos posibles?

En el caso de autos, Zambrana ya había completado formalmente tres cuartas partes del período probatorio y se encontraba en la mitad de la última fase cuando entró en vigor la veda electoral. **De los 120 días del período probatorio, ya habían transcurrido 105 de ellos, al entrar en vigor la veda**. ¿Tenía algún sentido jurídico suspender el período probatorio entonces? ¿Qué propósito válido respecto al principio de mérito se lograba con ello?

Al ponderar objetivamente la interrogante anterior, es menester tener en cuenta que el propio proceso de nombramiento probatorio fue

establecido precisamente para que la selección del personal de carrera se llevara a cabo con suficientes garantías de pureza administrativa. No vemos cómo interrumpir tal proceso probatorio adelanta los propósitos de una medida como la veda electoral, que persigue igualmente asegurar la pureza de las acciones gubernamentales durante el tiempo en que llegan "a máxima efervescencia las pasiones políticas". Ortiz v. Alcalde de Aguadilla, supra. En efecto, el proceso de evaluación de empleados con nombramientos probatorios es uno de los elementos propios del principio de mérito, por lo que la evaluación que nos concierne aquí sirve precisamente para hacer valer ese principio. No se trata de un asunto "extraño y opuesto al fundamental principio", id., a la pág. 824, sino, por el contrario, una medida que ayuda a implantarlo. Como señalamos en Reyes Coreano v. Director Ejecutivo, 110 D.P.R. 40, 55 (1980), la veda electoral es sólo uno de los elementos que componen el sistema de mérito que debe observarse en el servicio público del país. El proceso de probación de un empleado antes de extenderle un nombramiento regular es otro elemento de no menor importancia. Es inaceptable una interpretación que convierta la veda en un obstáculo de otro componente del principio de mérito. No tiene sentido jurídico alguno, pues, argüir que la veda se extiende incluso a la evaluación que aquí nos concierne.

IV

El Procurador General de Puerto Rico, en su alegato en el caso de autos, aduce que el nombramiento de Zambrana se hizo en contravención a lo dispuesto en la Carta Normativa Especial Núm. 2-92 emitida por el Director de OCAP para regir durante la veda electoral del 1992. Dicha carta disponía, en lo pertinente, que las autoridades nominadoras:

> "se abstendrán de efectuar acciones de personal en las áreas de... Reclutamiento y Selección. Se incluye todo proceso y tipo de nombramiento y la aprobación del período probatorio."

El Procurador General afirma escuetamente que entiende que lo citado aplica a los hechos de autos. Sin embargo, no explica de modo alguno cuáles son los fundamentos de tal afirmación. En primer lugar, el Procurador General no dilucida la medular cuestión de si la referida carta normativa es mandatoria o si es meramente directiva para una agencia como la de autos, que está expresamente excluida del Sistema de Administración de Personal que encabeza el Director de OCAP. Es cierto, como hemos señalado antes, que aún las corporaciones públicas que funcionan como negocios privados, deben observar el principio de mérito respecto a sus empleados no unionados. Pero es igualmente cierto que ello no significa que dichas corporaciones forman parte del sistema administrativo creado por la Ley de Personal, que es supervisado por el Director de OCAP. Cuando la Ley de Personal se legisló en 1975, la Asamblea Legislativa estaba plenamente consciente de que en Puerto Rico, además de existir los tradicionales departamentos y agencias de gobierno, existían también otras nuevas entidades públicas, distintas a las anteriores, que habían surgido por la necesidad que tenían de poder operar con mayor flexibilidad que aquellas para el desarrollo eficaz de sus programas. El legislador tuvo la intención de extender el principio de mérito a todas las instrumentalidades gubernamentales --tanto las tradicionales como las nuevas-- sin alterar, sin embargo, la necesaria autonomía operacional de estas últimas. Por eso, se dispuso que las nuevas entidades públicas aludidas quedarían excluidas del sistema administrativo creado por la Ley de Personal, a la vez que se les ordenaba a éstas que debían adoptar ellas mismas un reglamento propio que incorporase el principio de mérito. Así se extendía dicho principio a las agencias excluidas, aunque éstas no formasen parte del sistema administrativo supervisado por OCAP. Véase, Reyes Coreano v. Director Ejecutivo, 110 D.P.R. 40 (1980). A la luz de lo anterior, y en vista además de que la ley que

creó la Autoridad de Carreteras confiere todos los poderes y facultades sobre ésta exclusivamente a su Junta de Gobierno, 9 L.P.R.A. sec. 2002, es cuando menos cuestionable que el Director de OCAP tenga injerencia mandatoria sobre la Autoridad de Carreteras.

Por otro lado, el Procurador General tampoco dilucida en su escrito ante nos cuál es el significado o alcance preciso de lo dispuesto en la carta normativa aludida. La instrucción de esa carta, en lo que sería pertinente aquí, parece referirse a que, durante la veda electoral, no debe aprobarse **todo el período probatorio** de algún empleado. **Ello no es lo que tenemos ante nos en este caso**. El asunto concreto aquí sólo tiene que ver con la realización de la segunda mitad de la última de tres fases del período probatorio, y no a todo el proceso en sí. Por tanto, la instrucción de OCAP no sería aplicable a este caso. Si la instrucción aludida, en cambio, se refiere estrictamente a que durante la veda electoral, no se debe formalizar la **aprobación** en sí del período probatorio, que conlleva según el Artículo 7 del Reglamento que nos concierne que el empleado pase a ocupar el puesto en cuestión con **carácter regular**, entonces dicha instrucción fue claramente observada en el caso de autos. Aunque la última evaluación de Zambrana durante el período probatorio se realizó estando en vigor la veda, el Director Ejecutivo de la Autoridad de Carreteras expresamente dispuso que la formalización del nombramiento permanente se realizaría luego de concluido el período de veda electoral. A la luz de todo lo anterior, pues, es cuando menos cuestionable la alegación del Procurador General de que la instrucción de la carta normativa aludida no fue observada.

Finalmente, en lo que respecta al significado de las normas de derecho aplicables, las interpretaciones del Director de OCAP, como se sabe, no son vinculantes para nosotros, sino que sólo tienen valor persuasivo. Reiteradamente hemos resuelto que la interpretación administrativa que una agencia le otorga a la ley que le toca implantar no nos obliga, aunque merece gran peso y deferencia. Vázquez v.

A.R.P.E., 128 D.P.R. 513 (1991); De Jesús v. Depto. Servicios Sociales, 123 D.P.R. 407 (1989); Asoc. Médica de P.R. v. Cruz Azul, 118 D.P.R. 669 (1987). En el caso de autos, la interpretación **actual** de OCAP, la que sobre el asunto que nos concierne aquí OCAP tiene **ahora**, coincide con nuestra propia interpretación de dicho asunto, lo que claramente abona a su validez. Recientemente OCAP emitió su Carta Normativa Especial Núm. 1-96 de 26 de julio de 1996, en lo que dispone respecto a la veda electoral, lo siguiente.

> "Se autoriza a las Autoridades Nominadoras a efectuar las evaluaciones periódicas y finales de empleados en período probatorio. En casos de que las evaluaciones finales resulten satisfactorias, la efectividad del cambio de status de probatorio a regular en el servicio de carrera se pospondrá hasta que termine el período de prohibición electoral". (Enfasis suplido).

Esta interpretación del asunto en cuestión, que es igual a la nuestra, es la que interesa en el caso de autos. Ello, no sólo porque es la que se refiere exactamente y de modo claro al asunto concreto que aquí nos concierne, sino además porque obviamente refleja el juicio **actual** y vigente de OCAP, producto de la experiencia acumulada a través de los años en la ingente gestión de hacer valer el principio de mérito. Como la interpretación de OCAP es pertinente en nuestras propias decisiones por el valor persuasivo que pueda tener, su juicio más depurado, que es el actual, es el que nos interesa.

V

Por todo lo anterior, es evidente que bajo nuestro ordenamiento jurídico, la última parte de la evaluación del desempeño laboral de un empleado de carrera en período probatorio puede completarse válidamente dentro del tiempo de veda electoral. Resolver de otro modo, para así convalidar un despido que obedece claramente a razones de discrimen partidista, no sólo distorsiona desvariadamente el alcance propio de la veda electoral, sino que, además, le resta valor a dicha veda, al atribuirle un resultado que es contrario al propósito que la anima.

Como no estoy dispuesto a hacerme parte de tal desfiguración de un mecanismo valioso, ni de la crasa injusticia que se escuda detrás de ella, disiento.


                              JAIME B. FUSTER BERLINGERI
                              JUEZ ASOCIADO



               EN EL TRIBUNAL SUPREMO DE PUERTO RICO



ROXANA M. ZAMBRANA TORRES

     Demandante


          vs.                          CT-97-1          CERTIFICACION


SERGIO L. GONZALEZ Y OTROS

     Demandados



                              SENTENCIA



     San Juan, Puerto Rico, a 10 de junio de 1998.


          Resolvemos la presente solicitud de certificación remitida por el Tribunal de Distrito de los Estados Unidos, Distrito de Puerto Rico (Hon. Salvador Casellas).

          La interrogante jurídica certificada por dicho Foro Federal fue la siguiente:

          "si la aprobación del período probatorio de la demandante Roxana M. Zambrama Torres durante el período de veda electoral dispuesto en la Ley de Personal de Puerto Rico constituye una transacción de personal que envuelve el principio de mérito."[37]

_____

[37]Lee así en el idioma inglés:

"whether plaintiff Roxana M. Zambrana Torres'
approval of a probationary period during the
electoral prohibition period constitutes a
personnel transaction within the merit
principle of the Public Personnel Law of P.R."

A la luz de los planteamientos de las partes, por una mayoría de votos, se resuelve en la afirmativa, esto es, el nombramiento probatorio de la señora Zambrana Torres constituyó una transacción de personal que envolvió el principio de mérito de la Ley de Personal de Puerto Rico.

Se ordena al Negociado de Traducciones de este Tribunal a traducir al inglés esta Sentencia y demás opiniones a la brevedad posible.

Regístrese y notifíquese.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García emitió separadamente opinión de conformidad; el Juez Asociado señor Corrada del Río emitió opinión de conformidad, a la cual se unen los Jueces Asociados señores Rebollo López y Hernández Denton. El Juez Asociado señor Fuster Berlingeri emitió opinión disidente, a la cual se unen el Juez Presidente señor Andréu García y la Juez Asociada señora Naveira de Rodón.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo